**SOUTHERN MILK SALES, INC., Plaintiff–Appellant,**

v.

**Don MARTIN, T.C. Jacoby & Company, Inc., and Northshore Milk Producers Association, Defendants–Appellees.**

Nos. 89–2139, 90–1029.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 14, 1990.

Decided Jan. 22, 1991.

James K. Robinson, Mark R. Werder, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., Mark A. Smedal, John J. McLaughlin, III (argued), D. Paul Alagia, Jr., Alagia, Day, Marshall, Mintmire & Chauvin, Louisville, Ky., for Southern Milk Sales, Inc.

Benjamin F. Yale (argued), Waynesfield, Ohio, David C. Devendorf, Port Huron, Mich., for Don Martin and Northshore Milk Producers Ass'n.

Robert D. Brignall, Michael M. Hathaway, Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore & Sills, Detroit, Mich., for T.C. Jacoby & Co., Inc.

Before MARTIN, Circuit Judge, WELLFORD, Senior Circuit Judge *, and

* The Honorable Harry W. Wellford assumed senior status on January 21, 1991.

SILER, Chief District Judge.\*\*

SILER, Chief District Judge.

Southern Milk Sales, Inc. (Southern) appeals from the district court's denial of a motion for a preliminary injunction and subsequent denial of a motion for reconsideration. Southern sought equitable relief pursuant to Michigan law, Mich.Comp. Laws § 450.109, and the federal Agricultural Fair Practices Act of 1967 (AFPA), 7 U.S.C. §§ 2301–06. The district court held that Southern would not be entitled to preliminary injunctive relief under Michigan law, as it applies only to permanent injunctions; nor under Fed.R.Civ.P. 65, as there was no irreparable injury to Southern; nor under the AFPA, as Southern did not have standing. We now affirm.

## I.

Southern is a nonprofit agricultural cooperative association whose membership consists of approximately 1,700 dairy farmers nationwide, including 50 farmers in the state of Michigan. Southern markets the milk produced by its members pursuant to individual membership and marketing agreements providing that Southern will be the "sole and exclusive agent for the purpose of marketing all milk of marketable quality ... save and except that used for home consumption...." In Michigan, Southern had an agreement with a dairy hauler, defendant Don Martin (Martin), to deliver its members' milk to the Borden, Inc. dairy processing plant.

On August 11, 1989, Martin diverted the bulk of his daily Southern milk pickup from the Borden plant to Sunshine Biscuits, Inc. The district court found that this diversion was arranged by a milk broker, defendant T.C. Jacoby & Company, Inc. (Jacoby), at the request of Martin, for the benefit of one of Southern's competitors, defendant Northshore Milk Producers Association (Northshore). Southern responded by sending a letter to its Michigan membership, informing them that their milk was not being shipped to Borden's and that it would arrange for a new hauler. Moreover, Southern indicated that if the milk was not picked up in a timely manner the members could dump their milk and receive compensation from Southern. Only three of the fifty Michigan members ceased their relationship with Martin.[1]

At the time of the preliminary injunction hearing, August 23, 1989, 47 of Southern's fifty Michigan members were continuing to deal with Martin. To fulfill its oral agreement with Borden, Southern relied on a temporary supply agreement it had with the Michigan Milk Producers Association (MMPA).

## II.

As a preliminary matter, we note our concern about whether the requisite controversy required by article III of the United States Constitution still exists in this case. We do not have jurisdiction where there is no "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

Southern demands that the defendants be enjoined from wrongfully interfering with the contractual relationships that Southern allegedly had with its member milk producers. This request for relief is contingent on the existence of valid contracts. If the cooperative members no longer have a contractual obligation to provide milk to Southern, then the defendants are free to do business with them.

There has been no attempt in this action to enjoin the recalcitrant members. In-

---

\*\* The Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky and United States District Judge for the Western District of Kentucky, sitting by designation.

1. After an aborted state court action, Southern brought suit in the United States District Court for the Eastern District of Michigan to enforce its marketing agreements with the 47 producers continuing to supply Martin for the benefit of Northshore.

deed, 47 out of 50 have chosen to ignore their alleged agreements even in light of an offer by Southern to pay for dumped milk. Moreover, each of the members signed agreements with Southern that expressly provide for termination upon written notice after one year. That these contractual obligations may have expired during the pendency of this action is of no moment in our determination of jurisdiction. *United States v. Munsingwear*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). Thus, it may very well be that this case is moot in that we are asked to resolve a conflict without a remedy to offer and consequently without power to decide.

■ Mootness, however, is a constitutional limitation of judicial power as well as a rule of self-restraint which the Supreme Court has sometimes relaxed. *See Wirts v. Glass Blowers Ass'n, Local 153*, 389 U.S. 463, 474, 88 S.Ct. 643, 649, 19 L.Ed.2d 705 (1968); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). In *Southern Pacific*, for example, the Court established the doctrine of deciding otherwise moot cases because they are capable of repetition yet evade review. *See also Weinstein v. Bradford*, 423 U.S. 147, 148–49, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). At oral argument, Southern asserted that this is such a case.

Southern maintains that it will continue to do business in Michigan, as will the defendants. Furthermore, we agree that the business decisions and relationships that led to the present controversy are capable of being repeated. Southern argues, however, that the controversy is also of the type that will escape review since in the normal course of events judicial resolution as to the appropriateness of equitable relief cannot be obtained before the expiration of the member agreements. Southern's contention is that even if it receives all the damages to which it is entitled, it can never be adequately compensated, absent a preliminary injunction, for its loss of marketing position.

While we are not indifferent to Southern's argument, *see United Food & Commercial Workers Union v. Kroger Co.*, 778 F.2d 1171, 1175–76 (6th Cir.1985) (holding that issue presented by the denial of preliminary injunction would escape review if not addressed until appeal of the case after disposition on the merits), we will reach the substantive issues in this case on other grounds. Specifically, there is an absence of facts to show definitively that a live controversy does not exist.

### III.

This case presents a classic choice of law problem as governed by *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. The choice presented is between applying Michigan or federal law to Southern's request for a preliminary injunction.

Article III, § 2 of the United States Constitution grants Congress the power to establish a federal court system. As an incident of this power, the federal government derives a legitimate interest in fashioning a body of procedural law. Chief Justice Warren noted the breadth of this mandate in *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965), observing that "the constitutional provision for a federal court system (augmented by the Necessary and Proper Clause) carries with it congressional power to make rules governing the practice and pleadings in those courts, which in turn includes power to regulate matters which, although falling within the uncertain area between substance and procedure, are rationally capable of classification as either." Thus, Congress enacted the Rules Enabling Act, 28 U.S.C. § 2072, which authorizes the Supreme Court to promulgate federal procedural rules.

The choice of law question in this case is not settled, however, merely by the existence of a federal procedural rule governing preliminary injunctions, Fed.R.Civ.P. 65. Indeed, the Supreme Court has framed the threshold inquiry as "whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court." *Walker v. Armco Steel Corp*, 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980).

Rule 65 does not provide explicit guidance as to the factors to be considered when making a preliminary injunction decision. We have looked, therefore, to general equitable principles in establishing the standards used to measure the appropriateness of granting a preliminary injunction under Rule 65. *See In Re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir.1985); *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256 (6th Cir.1977). Consequently, we have filled the interstices of Rule 65 in such a way as to address the question involved in this case: whether the facts compel the granting of a preliminary injunction. To determine whether we are bound to apply state law under these circumstances we turn to the methodology adopted in *Hanna v. Plumer.*

■ In *Hanna,* the Supreme Court reversed the district court's ruling that service of process should be governed by state law rather than Fed.R.Civ.P. 4(d)(1). In doing so, the Court made clear that these determinations should be made with reference to the policies underlying the *Erie* doctrine. *See Hanna v. Plumer,* 380 U.S. at 468, 85 S.Ct. at 1142; *Ringrose v. Engelberg Huller Co.,* 692 F.2d 403, 405 (6th Cir.1982); *Miller v. Davis,* 507 F.2d 308 (6th Cir.1974). In essence, this requires us to defer to the states unless some important federal interest is involved. *Id.* This would be the situation, for example, where the matter is one of procedure rather than substance. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

Southern contends, with reference to an unpublished Michigan circuit court opinion, that the language of Mich. Comp. Laws § 450.109 necessarily authorizes the granting of preliminary injunctions.[2] Southern argues that if preliminary injunctions could not issue under this statute, it would be rendered impotent since agricultural cooperative members could breach their agreements with impunity knowing that the judicial process would take longer than the one year duration of their contracts. Therefore, Southern concludes, the only prerequisite for issuing a preliminary injunction in this case is showing that § 450.109 has been violated.

Although we are inclined to accept the trial court's conclusion that § 450.109 applies only to permanent injunctions, *see Rudd–Melikian, Inc. v. Merritt,* 282 F.2d 924, 929 (6th Cir.1960) (where state law is unclear court of appeals should not reverse if district judge reached a permissible conclusion), *cited in Bailey v. V & O Press Co.,* 770 F.2d 601 (6th Cir.1985), it does not matter, as the issue in question is procedural. We reach this conclusion by noting that the purpose of a preliminary injunction, in contrast to one that is final, "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Thus, the case law set forth in *DeLorean* to guide us in applying Fed.R.Civ.P. 65 governs what is essentially procedural. *Accord Capital Tool and Manufacturing Co. v. Maschinenfabrik Herkules,* 837 F.2d 171 (4th Cir.1988); *Purcell v. Summers,* 145 F.2d 979 (4th Cir. 1944). It is federal law, therefore, that controls in this action.

## IV.

■ To qualify for injunctive relief under Rule 65, Southern must meet the four-

---

**2.** Sec. 109. Same; PERSONS LIABLE FOR DAMAGE FOR ENCOURAGING BREACH OF CONTRACTS AND AGREEMENTS. Any person, firm, or corporation who solicits or persuades or permits or aids or abets, any stockholder and/or member or other person to breach a contract with a cooperative corporation, by accepting or receiving from such stockholder and/or member or other person, products for sale, marketing, manufacturing, or processing for sale, contrary to the terms of any marketing agreement of which said person or any member of said firm or any officer or manager of said corporation has knowledge or notice, shall be liable to the cooperative corporation aggrieved in a civil suit in the penal sum of $500.00 for each such contract; and such cooperative corporation *shall be entitled to an injunction against such person, firm, or corporation to prevent further breaches and a multiplicity of actions thereon.* Mich. Comp. Laws § 450.109 (emphasis added).

part test set forth in *DeLorean*.[3] Southern claims that the requisite harm will occur if the contractual breaches continue as that will lead to a decline of confidence in the cooperative. This, allegedly, will result in difficulty in acquiring milk, loss of customers, and ultimately in the dissolution of the cooperative.

The district court focused only on the "irreparable injury" requirement which it found to be "the single most important prerequisite" (citing *Metrobanc v. Federal Home Loan Bank Bd.*, 666 F.Supp. 981, 984 (E.D.Mich.1987)). It found no facts to support a determination of "irreparable harm" under the federal rule. Specifically, the lower court concluded that the particular injuries alleged were susceptible to being compensated by money damages. The court reasoned that while Southern may lose customers for its milk, there was no showing that the market was so limited that the damage would be irreparable. Moreover, it was not at all clear, in the court's view, whether granting an injunction would prevent the farmers from taking their business elsewhere.

■■■ On appeal, the standard for reviewing a preliminary injunction determination is abuse of discretion. *Securities and Exchange Commission v. Senex Corp.*, 534 F.2d 1240 (6th Cir.1976). The district court was well within its province in determining that a preliminary injunction was not necessary if Southern would not suffer "irreparable harm" in the absence of such relief.

### V.

Southern maintains that it has standing to invoke the protection provided by the AFPA. The Supreme Court, in *Michigan Canners and Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board*, 467 U.S. 461, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984), concluded that although the primary intent of Congress in passing

this law was to protect "individual producers from interference by processors when deciding whether to belong to a producers' association, the Act also protects the producer from coercion by associations of producers." *Id.* at 464, 104 S.Ct. at 2520. *Michigan Canners* did not, however, directly address the standing issue and neither will we.

■■ While Southern may indeed have standing under the AFPA, the relief sought on this appeal is not a substantive adjudication of the merits but rather review of the denial of a request for an equitable remedy in the form of a preliminary injunction. As indicated by our analysis above, this is a matter of federal procedural law under Rule 65 and does not depend on the substantive provisions of the AFPA. *See Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100 (6th Cir.1982) (applying general equitable principles to granting of preliminary injunction pursuant to Clayton Act, 15 U.S.C. § 26).

### VI.

The district court's findings are not clearly erroneous. Its denial of a preliminary injunction was well within the bounds of discretion that the law confers on a trial judge. Therefore, the denial of a preliminary injunction by Judge James Harvey is AFFIRMED.

---

3. Four factors are particularly important in determining whether a preliminary injunction is proper: (1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction.
*In Re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985).