S.A.F.E., an unincorporated association, William Kyle, Jeff Testa, Kevin Wilson, Paul Scharfenburg, Hymie Cutler, Ronald Edwards, and Brandon Landers, Plaintiffs,

v.

DETROIT BOARD OF EDUCATION, Kwane Kenyatta, Clifford Watson, Malcolm X Academy Local School Community Organization (LSCO), Defendants.

No. 93–CV–71153–DT.

United States District Court, E.D. Michigan, S.D.

March 19, 1993.

Constance E. Cumbey, Bloomfield Hills, MI, for plaintiffs.

Eric L. Clay and Camille Stearns Miller, Detroit, MI, for defendants, Detroit Bd. of Educ., Clifford Watson and the Malcom X Academy Local School Community Organization (LSCO).

Jeffrey L. Edison, Detroit, MI, for defendant, Kwame Kenyatta.

## ORDER [1]

JULIAN ABELE COOK, Jr., Chief Judge.

On March 16, 1993, the Plaintiffs [2] filed a Complaint [3] against the Defendants [4] pursuant to 28 U.S.C. § 1331, in which they allege that the Defendants had violated their rights under the First and Fourteenth Amendments of the United States Constitution.

Their claims arise out of an alleged invitation by some of the Defendants to Louis Farrakhan, the so-called leader of the "Nation of Islam," to speak at a fund-raiser entitled "Saving the African American Male" to benefit the Malcolm X Academy.[5] (First Amended Complaint [hereinafter "Complaint"] at 2.) In her affidavit, Constance E. Cumbey, counsel for the Plaintiffs, says that the event is privately funded and is scheduled to be held at a Detroit high school. *Id.*; (Constance E. Cumbey Affidavit at ¶ 3.)

On March 18, 1993, the Plaintiffs filed a Motion for Preliminary Injunction pursuant to Fed.R.Civ.P. 65. On the same date, this Court issued an order that (1) accelerated the hearing on the preliminary injunction motion, and (2) directed the Plaintiffs to effectuate service of all previously filed documents in this matter upon the Defendants.

For the reasons that have been set forth in this Opinion, the Plaintiffs' application for injunctive relief must be rejected.

### I.

The Plaintiffs, a claimed "multi-racial" and "multi-ethnic" unincorporated association and several individuals (some of whom have children in the Detroit public schools), contend that the Defendant, Malcolm X Academy Local School Community Organization (LSCO), in association with the Muhammad Mosque No. 1, invited Farrakhan to speak at a conference to be held at Mckenzie High School, a Detroit public school facility, on March 27, 1993. (Plaintiffs' Brief in Support of Motion for Preliminary Injunction at 2.) According to the Plaintiffs, the purpose of the event is to raise funds for a scholarship to aid Detroit

1. This Order supersedes the oral comments by the Court at the conclusion of the arguments by counsel during a hearing on March 19, 1993.

2. The Plaintiffs are "Saving American Fundamentals in Education" (referred to as S.A.F.E.), an unincorporated association, William Kyle, Jeff Testa, Brandon Landers, Kevin Wilson, Paul Scharfenburg, Hymie Cutler, and Ronald Edwards.

3. On March 18, 1993, the Plaintiffs filed their First Amended Complaint.

4. The Defendants are the Detroit Board of Education, the Malcolm X Academy Local School Community Organization (LSCO), and two individuals, Kwane Kenyatta, a member of the Detroit Board of Education, and Clifford Watson, the principal of the Malcolm X Academy.

5. The Malcolm X Academy, a Detroit public elementary and secondary school, has adopted the "African–Centrist" curriculum.

youth, particularly Black males, and the Malcolm X Academy.

Cumbey[6], states that on March 10, 1993, she observed a local television news program during which Watson endorsed the Farrakhan event and proclaimed "in his official capacity as principal of Malcolm X Academy that the Nation of Islam represented an excellent role model worthy of emulation by Detroit public school children." (Cumbey Affidavit at ¶ 4.) She further asserts that several brochures and posters were shown on television which advertised the upcoming event, including a poster in Watson's office. *Id.* at 5.

The Plaintiffs claim that the Defendants' actions violated the constitutional safeguards against the establishment of religion, in that (1) the Nation of Islam religion is promoted by this scheduled program, (2) the religions that Farrakhan "so aggressively condemns," such as Judaism and Christianity, have been inhibited by the Defendants' conduct, and (3) the LSCO, as a "quasi-public body"[7], the Detroit Board of Education, Watson, and Kenyatta have excessively and improperly entangled in their official capacities with the Nation of Islam. As such, they maintain that the Defendants have trammeled upon their First Amendment protections.

In their Complaint, the Plaintiffs seek an order that will restrain or enjoin (1) the LSCO from sponsoring Farrakhan as a speaker for this fund-raising event, (2) Watson from (a) promoting the event in his public capacity as a Detroit school official and (b) advocating the Nation of Islam as "an acceptable role model" for children at the school, (3) Kenyatta from the "sponsorship, advocacy, or participation in any event whatsoever" that will promote Farrakhan or the Nation of Islam, (4) the Board and "its associates and employees" from promoting the event "on public time at public expense" including hanging posters in school hallways, distribu-

tion of flyers with school children, and over the Board's radio station, WDTR, and (5) the Board from permitting this event to take place at Mckenzie High School unless it is sponsored by a private organization. The Plaintiffs say that other groups are allowed to rent this forum, and are charged a "fair rent" including the cost of janitorial service, security, and utilities. (Complaint at 6–7). Moreover, the Plaintiffs seek (1) a hearing by this Court to determine what public monies have been spent on this event thus far, (2) an order that will direct such funds to be repaid to the Detroit public school system, and (3) attorney's fees. *Id.* at 7.

## II.

The Sixth Circuit Court of Appeals (Sixth Circuit) has identified four inquiries that a court should make when evaluating a request for the issuance of a preliminary injunction:

(1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

(2) whether the movant has shown irreparable injury;

(3) whether the preliminary injunction would cause substantial harm to others, including the opposing party; and

(4) whether the public interest would be served by issuing the preliminary injunction.

*Frisch's Restaurant, Inc., v. Shoney's Inc.,* 759 F.2d 1261, 1263 (6th Cir.1985); *In re De Lorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985); *Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98, 103 (6th Cir.1991); These factors are not individual prerequisites. Rather, they must be balanced. *Frisch's,* 759 F.2d at 1263. A district court is required to make specific findings concerning each of these four factors, unless fewer would be dispositive of the issue. *In re De Lorean Motor Co.,* 755 F.2d at 1228; Fed.R.Civ.P. 52. However, the decision to grant or deny a

---

6. Cumbey avers that "I have been publicly visible as representing the Warrendale Association of Residents and other racially diverse City of Detroit residents on constitutional and civil rights issues surrounding the highly controversial Malcolm X Academy located in the City of Detroit." (Cumbey Affidavit at ¶ 1.)

7. The Plaintiffs claim, with little clarity, that the LSCO receives public funds. They contend that the LSCO receives Chapter I funds from the United States Government to compensate for economically disadvantaged students. (*See* Complaint at ¶ 12.)

preliminary injunction is committed to the sound discretion of the trial court. *Id; Southern Milk Sales,* 924 F.2d at 103.

### A. *Likelihood of Success on Merits*

Generally, there are two clauses within the First Amendment which deal with the subject of religion; namely, the "Establishment Clause," and the "Free Exercise Clause." The First Amendment, in part, states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." These two clauses are applicable to the states under the Due Process Clause of the Fourteenth Amendment. *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

■ The Establishment Clause prohibits government sponsorship of religion and proscribes that government must neither aid nor formally establish a religion. If a law is challenged under the Establishment Clause, it must pass three tests:

(1) the statute must have a secular legislative purpose;

(2) its primary effect must be one that neither advances nor inhibits religion; and

(3) the statute must not foster an excessive entanglement with religion.

*Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111–12, 29 L.Ed.2d 745 (1971).

The Supreme Court has stated that "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente,* 456 U.S. 228, 244, 102 S.Ct. 1673, 1683, 72 L.Ed.2d 33 (1982). A state may not adopt "programs or practices" which aid or oppose any religion. *Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

■ When faced with a state law which grants a denominational preference, the Court should treat it as suspect and evaluate

its content with strict scrutiny. *Larson,* 456 U.S. at 246, 102 S.Ct. at 1684. "There is and can be no doubt that the First Amendment does not permit the State to require that teaching and learning must be tailored to the principles or prohibitions of any religious sect or dogma." *Epperson* 393 U.S. at 106, 89 S.Ct. at 271.

The test in this instance is "what are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution." *School Dist. of Abington v. Schempp,* 374 U.S. 203, 222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844 (1963).

■ Here, the likelihood of the Plaintiffs succeeding on the merits is, at best, doubtful. Under the *Lemon* test, challenged violative conduct [8] would have the secular purpose of bringing the discussion of a unique and controversial topic to the Detroit community; to wit, the promotion of self-pride to Detroit's youth and the necessity for a concentrated effort on the development of African American men, as well as providing access to a political speaker with an alternative point of view. The mere fact that a speaker is, or may be, controversial or closely allied with a religious group does not, in this instance, defeat the government's secular purpose.

On the basis of the record, the Plaintiffs have not made clear whether the challenged conduct would improperly promote or inhibit religion. Watson's alleged statements that Farrakhan is a role model to children, and the placement of posters in his office, are not enough to establish the government's aid to the Nation of Islam religion. Even though Farrakhan may have made controversial comments, or has had such comments attributed to him, which, to many, indicate a hostility to Jews and Judaism (*see* Complaint at 5, subpara. i), this factor, standing alone, fails to indicate that the Defendants' actions amount to an unconstitutional opposition to religions other than the Nation of Islam.

---

8. Conduct, by itself, may not be actionable. Generally, the doctrine in this area focuses on some official sanction of religious activity, such as a law or other legislative activity or conduct which aids or inhibits religion. Here, there is no "law" or "statute" per se, and there is no evidence of a sufficient pattern or practice.

Finally, there is no evidence that the sponsorship of this event would unduly or excessively entangle the government so as to be actionable. Based on the available record, the only administrative or other entanglement appears to be with the LSCO, and not with the Board or the other parties. However, the Plaintiffs do assert that "there had to be close coordination between the [Board and LSCO] to bring this event ... [and it will require the Board to spend for] security, utilities, administrative coordination time, and publicity...." (Plaintiffs' Brief at 7.) But, without more, such speculation amounts to little and is not enough to show excessive entanglement.

Thus, because the primary purpose of the event is not to advance or inhibit religion, it is presumptively acceptable. *Abington,* 374 U.S. at 222, 83 S.Ct. at 1571. Moreover, there is no evidence that the Defendants are engaged in a teaching that is "tailored to the principles or prohibitions" of the Nation of Islam or any other religion. *Epperson,* 393 U.S. at 106, 89 S.Ct. at 271.

For these reasons, the Plaintiffs have not shown a strong or substantial likelihood or probability that they will succeed on the merits. As such, the entry of a preliminary injunction is not appropriate.

**B.** *Irreparable Harm*

█ Generally, the existence of an irreparable harm depends upon whether there is an adequate remedy at law. "An 'adequate remedy at law' is a remedy that is plain and complete and as practical and efficient to the ends of justice as the remedy in equity by injunction." *USACO Coal Company v. Carbomin,* 689 F.2d 94, 99 (6th Cir.1982).

Here, the remedies at law are facially insufficient because they seek significant injunctive action by this Court. However, the Plaintiffs have failed to identify—except through conjecture and references to the Malcolm X Academy—the harm that will flow from the Defendants' conduct. At oral argument, the counsel for the Plaintiffs stated that such harm occurs in that the "Nation

of Islam will be advanced in the eyes of children ... [and] the community...." Although the coercive nature of religious activity in schools is often actionable due to the harm that it creates, *See Stein v. Plainwell Community Schools,* 822 F.2d 1406, 1409 (6th Cir.1987), this event is, according to the record, not a required school activity but rather a public, voluntary fundraiser. If the Plaintiffs disagree with the decisions or actions of the Board of Education, or, for that matter Farrakhan himself, they are free to protest in a manner that is legally appropriate. Because there is no harm to them, the Plaintiffs' request for a preliminary injunction fails on this ground.

**C.** *Balancing of Harms/Public Interest*

With regard to the third and fourth tests under the *Frisch's* standard, the impact of the imposition of an injunction is unclear because there has been no written response to the motion.[9] Presumably, the lateness of the motion would endure financial harm if this Court restricted Farrakhan from speaking due to cancellation fees or refunds. It may be noted that the Detroit community has hotly debated issues such as the all boys school, African-Centric academic programs, and the Malcolm X Academy. Louis Farrakhan has sparked much controversy over the years between various segments of the communities in which he has appeared. Under the circumstances of this ongoing political debate, and when all of the factors are balanced together, they would not warrant the imposition of an injunction.

**D.** *Security*

Fed.R.Civ.P. 65(c) mandates that no preliminary injunction will issue without the giving of security by the moving party in an amount of costs and damages suffered by any party who later is found wrongfully enjoined. Hence, if the Court determines that a preliminary injunction should issue, the Court must establish the amount of security to be posted. The amount is committed to the discretion of the trial court. *USACO Coal Company,* 689 F.2d at 100.

9. The Defendants were given less than twenty-four (24) hours to prepare for, and appear at, the hearing on the Plaintiffs' application for injunc-

tive relief. Hence, their failure or inability to respond in writing to the Plaintiffs' motion is justifiable under the circumstances.

However, inasmuch as the Plaintiffs' have not satisfied the requisite elements for injunctive relief under the *Frisch's* standards, the issue has become, and is, moot for the purpose of this hearing.

Therefore, the Plaintiffs' Motion for Preliminary Injunction must be denied for the reasons that have been mentioned.

IT IS SO ORDERED.