**Jane DOE, Plaintiff,**

v.

**John BARRON, Defendant.**

**No. C–1–99–611.**

United States District Court, S.D. Ohio, Western Division.

Aug. 12, 1999.

Jennifer Lynn Branch, Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Cincinnati, OH, for Jane Doe, plaintiff.

### ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

DLOTT, District Judge.

This matter is before the Court on Motion for Temporary Restraining Order

["TRO"] and Preliminary Injunction filed by Plaintiff Jane Doe,[1] a prisoner incarcerated at River City Correctional Center, a minimum security prison in Cincinnati, Ohio. Plaintiff seeks an order and injunction restraining Defendant Barron, in his official capacity as Director of the River City Correctional Center, from denying access to abortion services. Upon consideration of the facts and the law, the Court will **GRANT** Plaintiff's Motion for a TRO.

## I. FACTS

Plaintiff is currently incarcerated in River City serving an eighteen month sentence. Plaintiff was incarcerated in River City on July 20, 1999. Plaintiff has served 24 days of her sentence to date.

Plaintiff is currently approximately nine weeks and three days pregnant. The exact length of pregnancy cannot be known due to the imprecise limitations of medical testing. On July 28, 1999 Plaintiff submitted written notice to Defendant requesting access to pregnancy termination services. Defendant denied Plaintiff's request and responded that it would not provide such access absent a court order.

Plaintiff subsequently filed this motion for a TRO and preliminary injunction on August 10, 1999. The plaintiff filed an affidavit on August 12, 1999 verifying that the facts in the Complaint are true and accurate. The Court heard oral argument from counsel on this Motion also on August 12, 1999.

## II. LEGAL STANDARD FOR ISSUING TROs AND PRELIMINARY INJUNCTION

■ The Court is authorized to issue TROs and/or Preliminary Injunctions pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiff has the burden of establishing "immediate and irreparable injury, loss, or damage will result" in order for the Court to grant a TRO. Fed. R.Civ.P. 65(b)(1). In determining whether to issue or withhold an injunction or TRO,

courts commonly balance the following factors:

(1) Whether the party seeking the injunction has shown a substantial likelihood of success on the merits;

(2) Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

(3) Whether an injunction will cause others to suffer substantial harm; and

(4) Whether the public interest would be served by the preliminary injunction.

*Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 460 (6th Cir. 1999); *Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98, 103 n. 3 (6th Cir.1991).

## III. ANALYSIS

■ The Court will examine each of the four factors for granting an injunction in turn. First, however, the Court will address the request of Defendant's counsel, raised in the hearing, that the Court delay these proceedings until at least August 17, 1999. Counsel for Defendant has requested additional time to gather facts on this issue because Defendant Barron is currently out of town and was unable to attend the hearing. The Court first notes that Defendant Barron has been on notice of Plaintiff's request for an abortion since July 28, 1999. This lawsuit was filed as a direct result of Defendant's insistence that the prison would deny access to abortion services absent a Court order. Further, Defendant concedes the essential facts that Plaintiff is approximately nine weeks pregnant, that she is incarcerated at River City, and that she has requested access to abortion services. The Court finds that Defendant Barron has had ample opportunity to gather facts and formulate its legal arguments opposing this Motion.

---

1. Jane Doe is, of course, a pseudonym, given to protect the prisoner's right to privacy.

## A. Likelihood of Success on the Merits

The parties agree that neither the Sixth Circuit, nor the United States Supreme Court, has directly addressed the exact issue before this Court: whether a state prison can refuse a female prisoner access to abortion services. The Supreme Court, however, settled the basic issue of a woman's right to terminate her pregnancy over twenty-five years ago in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The "right to privacy . . . is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Id.* at 153, 93 S.Ct. 705. The Court has reaffirmed this right in subsequent decisions. "[A] State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Planned Parenthood of Southeastern Penn. v. Casey,* 505 U.S. 833, 878, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (O'Connor, J., Kennedy, J., Souter J.).

The Third Circuit has addressed the issue before this Court and it held that a prison policy "requiring court-ordered releases for inmates to obtain nontherapeutic, elective abortions impermissibly burdens the inmates' constitutionally protected right to choose to terminate their pregnancies." *Monmouth Cty. Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 351 (3d Cir.1987). The Third Circuit found that the regulation, similar to the River City's position in this matter that it would not provide access to abortion services absent a court order, bore no logical connection to legitimate penological interests. *See id.* It further found that the regulation constituted deliberate indifference, under the Eighth Amendment, to the serious medical needs of pregnant inmates. *See id.*

The Court finds the reasoning of the Third Circuit to be persuasive, and in the absence of controlling precedent to the contrary, holds that Plaintiff has met her burden of proving the likelihood of success on the merits.

## B. Irreparable Harm to Plaintiff If the Injunction is Not Issued

Plaintiff argues that there is a great need for immediate injunctive relief because Plaintiff will suffer immediate and irreparable relief if she is denied an abortion. Defendant's primary argument on this factor was that Plaintiff will not be irreparably harmed if the Court stays these proceedings and its judgment until at least August 17, 1999. Defendant argues that Plaintiff will still be in her first trimester if the proceedings are stayed.

The Court holds that Plaintiff will be irreparably harmed if she is not granted immediate access to abortion services. The Supreme Court spoke at length on the harm women face if forced to carry an unwanted pregnancy to term:

> The detriment that the State would impose upon the pregnant woman by denying this choice altogether is apparent. Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. . . . There is also the distress for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically or otherwise to care for it. . . . All these are factors the woman and her responsible physician necessarily will consider in consultation.

410 U.S. at 153, 93 S.Ct. 705.

Further, the Court is convinced that a delay will unnecessarily increase the health risks imposed on Plaintiff. "Time is likely to be of the essence in an abortion decision." *H.L. v. Matheson,* 450 U.S. 398, 412, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981). Plaintiff is near the end of her first trimester of pregnancy. Defendant's refusal to deny her access to abortion services absent Court order has already delayed the abortion procedure two weeks. Subsequent to the issuance of this Court Order, the Plaintiff's procedure will be further

delayed by necessary complications such as scheduling an appointment with a physician and arranging for transportation by the prison. The Court believes that further delay may significantly increase the harm faced by Plaintiff due to her pregnancy and her choice to have an abortion. *Cf. Zbaraz v. Hartigan,* 763 F.2d 1532, 1537 (7th Cir.1985) ("[I]t is uncontested that delays of a week or more do indeed increase the risk of abortion to a statistically significant degree....").

## C. Granting the Injunction Will Not Cause Substantial Harm to Others

Defendant faces only a minimal burden in providing Plaintiff access to abortion services. Defendant will be required to arrange transportation and process Plaintiff's temporary release so that she may obtain the surgery and any necessary follow-up. This burden is no different, however, than the burden the prison voluntarily assumes to provide other medical services to its inmates in outside medical facilities. *Cf. Monmouth,* 834 F.2d at 341 ("Indeed, such an accommodation certainly imposes no greater burdens than already exists under the County's accepted responsibility to provide all pregnant inmates with proper pre- and post-natal care."). The Court also notes that Plaintiff intends to incur the expenses of the medical procedure herself and thus there can be no argument of a harm to the public interest by using taxpayer moneys to fund the abortion procedure itself.

## D. Whether the Public Interest Will Be Served By Issuing the TRO

Finally, the Court concludes that the public interest is served by granting Plaintiff access to abortion services. A woman's right to choose to terminate her pregnancy was decided more than twenty-five years ago in *Roe v. Wade.* It is in the public's interest to uphold that right when it is being arbitrarily denied by prison officials absent medical or other legitimate concerns.

## III. CONCLUSION AND ORDER

Plaintiff Jane Doe has met her burden of establishing immediate and irreparable harm if a TRO is not granted.

Therefore, Defendant Barron, the Director of River City Correctional Center, his agents, servants, employees, attorneys and successors are hereby **ENJOINED** from denying access by the plaintiff to abortion services. Defendant is ordered, consistent with normal security procedures for outside medical visits, to transport plaintiff to a Cincinnati health care provider that provides abortion services to be selected by the plaintiff. Such transportation shall be for the purpose of permitting the plaintiff to secure abortion services, including but not limited to any necessary counseling, education, surgery, and follow-up services.

Bond shall be set at $1.00.

**IT IS SO ORDERED.**