**RIVER PARK, INC., and Country Club Estates, Ltd., Plaintiffs–Appellants,**

v.

**CITY OF HIGHLAND PARK, Defendant–Appellee.**

No. 93–3017.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1994.

Decided April 25, 1994.

Paul E. Slater (argued), Mitchell H. Macknin, Robert D. Cheifetz, Sperling, Slater & Spitz, Chicago, IL, for plaintiffs-appellants.

Stephen R. Swofford, Thomas S. Malciauskas, Donald L. Mrozek, Hinshaw & Culbertson, William R. Quinlan (argued), Michael K. Bartosz, Pope, Cahill & Devine, Chicago, IL, for defendant-appellee.

Before EASTERBROOK and MANION, Circuit Judges, and McDADE, District Judge.*

EASTERBROOK, Circuit Judge.

Federal courts are not boards of zoning appeals. This message, oft-repeated, has not penetrated the consciousness of property owners who believe that federal judges are more hospitable to their claims than are state judges. Why they should believe this we haven't a clue; none has ever prevailed in this circuit, but state courts often afford relief on facts that do not support a federal claim. Is it that they have omitted the steps necessary to obtain review in state court and hope for the best in a second-chance forum? Well, we are not cooperating. Litigants who neglect or disdain their state remedies are out of court, period.

River Park, Inc., owned the Highland Park Country Club in Highland Park, Illinois. Although used as a golf course, the land's R1 zoning permitted River Park to construct residential housing—but no more than one house per three acres. River Park decided to build a residential subdivision, with a half acre per lot. This required R4 zoning, which it duly requested. River Park insists, and we shall assume, that state law required the City to grant its application. Local sentiment preferred a golf course to more housing. A member of the City Council organized a citizens' committee called "Save the Open Space," which the City Manager supported. Stalling tactics ensued. Officials nominally approved the rezoning, but the City Engineer, who had to pass on technical details, raised one niggling objection after another and eventually went incommunicado. He twiddled his thumbs for so long, an entire year, that the zoning application expired and had to be refiled. After River Park filed a second application, city officials found a new delaying tactic and directed it to begin from scratch yet again. By this time River Park was bankrupt. Its lender foreclosed. River Park retained one asset—this action, under 42 U.S.C. § 1983, seeking damages from the City for a violation of the due process clause of the fourteenth amendment.

The Constitution says that no "State [may] deprive any person of life, liberty, or property, without due process of law". The district court dismissed the complaint, ruling that River Park had not been deprived of any "property." 1993 WL 281079, 1993 U.S.Dist. LEXIS 10197 (N.D.Ill.). State and local zoning rules are too vague, the court believed, to create a legitimate claim of entitlement to the R4 zoning River Park sought. At critical passes the laws create governmental powers without commanding specific action. For example, Highland Park Ordinance § 150.400.-3.5 (emphasis added) provides that "[t]he City Council *may* authorize an amendment" to the zoning classification. Without a legitimate claim of entitlement there is no property. See *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

For the reasons the district court gave, River Park may well have lacked a property

* Hon. Joe Billy McDade, of the Central District of Illinois, sitting by designation.

interest in one classification rather than another. But it surely had a property interest in the land, which it owned in fee simple, and it is therefore entitled to contend that the City's regulation of that land deprived it of property without due process. The references to "property" in the Constitution reflect its Lockean heritage. The founding generation viewed "property" in concrete terms—land and chattels acquired by the investment of effort or purchase from another. An owner may build on its land; that is an ordinary element of a property interest. Zoning classifications are not the measure of the property interest but are legal *restrictions* on the use of property. See *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Licenses, permits, and classifications are important to owners because they reflect governmental promises not to interfere with private uses of property, but let us not confuse a decision not to intervene with the property itself. *Toulabi v. United States*, 875 F.2d 122 (7th Cir.1989); *Fleury v. Clayton*, 847 F.2d 1229 (7th Cir.1988); *Scott v. Kewaskum*, 786 F.2d 338 (7th Cir.1986).

It has become useful to think of some governmental promises as "property." In a world characterized by many "positive liberties"—public education, grants and subsidies, public employment and the like—the arbitrary power of petty bureaucrats is checked by calling these promises "property" and requiring the government to supply due process. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Efforts to distinguish among kinds of public assistance and involvement have produced the positivist approach of *Roth* and later cases, e.g., *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), under which only promises marked by determinate criteria count as "property." *Wallace v. Robinson*, 940 F.2d 243, 246–48 (7th Cir.1991) (en banc). But this is a definition of the "new property" rather than the "old property." In the main, the Constitution is a charter of negative rather than positive liberties. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Jackson v. Joliet*, 715 F.2d 1200, 1203 (7th Cir.1983); David P. Currie, *Positive and Negative Constitutional Rights*, 53 U.Chi.L.Rev. 864 (1986). Those things people can hold or do without the government's aid count as property or liberty no matter what criteria the law provides. So, for example, the ability to work in the ordinary occupations of the community is a liberty or property interest. *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915); cf. *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 102–04, 96 S.Ct. 1895, 1905–06, 48 L.Ed.2d 495 (1976). See also Henry Paul Monaghan, *Of "Liberty" and "Property,"* 62 Cornell L.Rev. 405, 434–43 (1977). Otherwise a single local ordinance providing that "we may put your land in any zone we want, for any reason we feel like" would abolish all property rights in land overnight. The due process and takings clauses are made of sterner stuff. E.g., *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

So River Park was entitled to due process of law. We know from *Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), that the procedures "due" in zoning cases are minimal. Cities may elect to make zoning decisions through the political process—in *Eastlake*, by putting the question to a popular referendum, direct democracy with no hearings of any kind. See also *Philly's v. Byrne*, 732 F.2d 87 (7th Cir.1984). Little wonder, then, that we held in *Coniston Corp. v. Hoffman Estates*, 844 F.2d 461, 467–68 (7th Cir. 1988), that municipalities need not use adjudicative procedures to make zoning decisions. Highland Park made a political decision in a political fashion, employing procedural maneuvers that prevented the question from reaching the floor for a vote. River Park got more process than the property owner in *Eastlake*. It may not have received the process Illinois directs its municipalities to provide, but the Constitution does not require state and local governments to adhere to their procedural promises. *Olim v. Wakinekona*, 461 U.S. 238, 248–51, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983); *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir.1988) (en banc). Failure to implement state law

violates that state law, not the Constitution; the remedy lies in state court.

There is a reason why such scant process is all that is "due" in zoning cases: so far as the Constitution is concerned, state and local governments are not required to respect property owners' rights, and there is therefore no obligation to provide hearings to ascertain a protected core. State and local governments may regulate and even take property; they must *pay* for what they take but are free to use the land as they please. True, there remains some possibility that a taking for a private use would violate the Constitution (perhaps under the rubric of substantive due process), but this esoteric concern has no pertinence here, for River Park does not contend that the City was substantively forbidden to keep the land as an open space. Cf. *Williamson County Regional Planning Commission,* 473 U.S. 172, 197–200, 105 S.Ct. 3108, 3122–24, 87 L.Ed.2d 126 (1985); *Gamble v. Eau Claire County,* 5 F.3d 285, 286–87 (7th Cir.1993). The remedy for excessive regulation is a suit for invalidation or inverse condemnation—a suit that, *Williamson* holds, belongs in state court. 473 U.S. at 195–96, 105 S.Ct. at 1321–22. We added in *Gamble* that a property owner may not avoid *Williamson* by applying the label "substantive due process" to the claim. 5 F.3d at 287–88. So too with the label "procedural due process." Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court. In *Williamson* state litigation would fix the compensation payable for a taking; when the claim depends on the due process clause, state litigation may supply that process. *Eastlake* anticipates this conclusion. 426 U.S. at 679 n. 13, 96 S.Ct. at 2365. This is not because the owner must "exhaust" state remedies; nor does this requirement reflect the rule of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that a random and unauthorized departure from a state's ordinary procedures must be protested to state court, see *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); rather the idea in zoning cases is that the due process clause permits municipalities to use political methods to decide, so that the only procedural rules at stake are those local law provides, and these rules must be vindicated in local courts.

Illinois provided River Park with ample means to contest the runaround it was receiving at the hands of Highland Park. If because the City refused to make a formal decision the standard means were cut off, the common law writ of certiorari remained. The opportunity to apply for that writ is enough, we have held, even when rights under the first amendment are at stake. *Graff v. Chicago,* 9 F.3d 1309, 1323–25 (7th Cir. 1993) (en banc). It is assuredly enough in a zoning case. River Park insists that state law entitled it to an R4 zoning; if that is so, state litigation would have fully protected its rights. Instead of asking for relief from the state courts, River Park went along with the political process until it was too late. It lost the political fight. Federal litigation is not a *repêchage* round for losers of earlier contests, or for those who overslept and missed the starters' gun.

AFFIRMED.