In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3236

GEFT OUTDOORS, LLC,

*Plaintiff-Appellant,*

*v.*

CITY OF WESTFIELD, Hamilton County, Indiana,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 17-cv-04063 — **Tanya Walton Pratt**, *Judge.*

ARGUED APRIL 5, 2019 — DECIDED APRIL 25, 2019

Before FLAUM, KANNE, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* GEFT Outdoors, LLC began building
a digital billboard on its property in the City of Westfield, In-
diana without obtaining or applying for the requisite sign per-
mit. GEFT believed Westfield's relevant sign standards ordi-
nance contains unconstitutional content-based speech re-
strictions and that this invalidity renders the ordinance non-
existent. GEFT only stopped installing the billboard when a
contract attorney for Westfield threatened to arrest GEFT's

representatives if the installation work continued. After this confrontation, Westfield and GEFT filed dueling injunction motions. GEFT asked for an injunction preventing Westfield from violating its due process rights; Westfield asked the district court to enjoin GEFT from installing the billboard pending the outcome of this litigation. The district court denied GEFT's motion and granted Westfield's motion, and GEFT filed this interlocutory appeal. We affirm.

## I. Background

### A. GEFT's Billboard & Westfield's Sign Standards

Plaintiff-appellant GEFT buys and leases land upon which it builds, maintains, and operates signs. It holds a valid leasehold interest in property located in Westfield (the "Esler Property"), and it initiated this lawsuit because it sought to build a digital billboard (the "Billboard") on this leased property. To do so, it needed a permit from both the State of Indiana and the City of Westfield. *See* Ind. Dep't of Transp., Outdoor Advertising Control Manual 46 (2014), https://www.in.gov/indot/files/Permits_OutdoorAdvertisingControlManual_2014.pdf (Indiana permitting requirements "are in addition to any permit or licensing requirements of local governing bodies").

Defendant-appellee Westfield adopted the Westfield-Washington Township Unified Development Ordinance in 2014. *See generally* Westfield-Washington Township, Ind. Ordinance ("UDO"). The UDO regulates a broad range of development activities in Westfield, including the design, placement, and maintenance of signs within the city. *Id.* art. 6.17 (the "Sign Standards").

The Sign Standards require a permit for most signs, but thirteen categories are exempt from that requirement (the "Permit Exceptions"). *Id.* art. 6.17(C)–(D).[1] The Sign Standards also prohibit twelve types of signs entirely, two of which the parties discuss here. *See id.* art. 6.17(E). "Off-premise Signs" are not allowed in Westfield, "except as otherwise permitted by" the UDO (the "Off-Premises Ban"). *Id.* art. 6.17(E)(5). An off-premises sign is "[a] Sign directing attention to a specific business, product, service, entertainment, or any other activity offered, sold, or conducted elsewhere than upon the lot where the Sign is displayed." *Id.* art. 12.1. Westfield also bars "Pole Signs." *Id.* art. 6.17(E)(4). A pole sign is "[a] Sign which is supported by one or more poles, posts, or braces upon the ground, in excess of six (6) feet in height, not attached to or supported by any building." *Id.* art. 12.1.

The UDO treats signs erected in violation of its provisions (including signs erected without permits) as common nuisances. *Id.* art. 11.2. To remedy such a nuisance, Westfield "may issue a stop work order and shall advise the Property Owner of the sign … in writing of a violation of this Chapter and specify a date for compliance. The written notice shall describe the violation, appeal process, and enforcement provisions including penalties that may be assessed." *Id.* art. 11.5(A). The city may also obtain an injunction in state court to restrain UDO violations. *Id.* art. 11.5(B).

---

[1] Westfield amended these categories in April 2018. Any amendments are irrelevant for purposes of appeal, however, and so we cite only to the version of the UDO in force during the relevant events in late 2017. This version is available in the record on appeal, at page 32 of the Appendix.

GEFT obtained the requisite sign permit from Indiana in October 2017. However, it never obtained (or even applied for) a sign permit from Westfield.

### B. GEFT's Billboard & Federal Lawsuit

Notwithstanding its lack of permit, GEFT began to erect the Billboard on the Esler Property on November 2, 2017. Specifically, GEFT installed a steel pole in the ground to serve as the Billboard's foundation and built a forty-square-foot "No Trespassing" sign nearby. The next day, GEFT sued Westfield in the Southern District of Indiana, challenging two portions of the Sign Standards—the Permit Exceptions and the Off-Premises Ban—as unconstitutional content-based speech restrictions. GEFT specifically alleged the Permit Exceptions and the Off-Premises Ban violated the First Amendment to the United States Constitution and Article I, § 9 of the Indiana Constitution, and that the Sign Standards did not comply with Indiana Home Rule requirements. GEFT sought as relief a declaratory judgment that the UDO's Sign Standards chapter was unconstitutional on its face and as applied, an order enjoining Westfield from enforcing the chapter, and damages pursuant to 42 U.S.C. § 1983.

On November 7, Westfield posted a "Stop Work Notice" on the steel pole on the Esler Property. The notice listed two UDO violations: "Installation of an accessory structure without a permit" and "Installation of a sign without a permit." GEFT responded to this development by letter on November 21, informing Westfield that it "intend[ed] to move forward with the erection of the Billboard" within the next thirty days. GEFT also informed the city that in its view, the Sign Standards simply did not apply to this planned work:

> The City's Sign Standards purport to preclude the erection of the Billboard. However, the Sign Standards are unconstitutional under applicable law, as they restrict GEFT's right to free speech under the First Amendment. Because they are unconstitutional, it is as if the Sign Standards do not exist.… Because the Sign Standards are void due to their unconstitutionality … there are no local sign regulations governing GEFT's erection of the Billboard.

In turn, Westfield sent another letter on November 22, elaborating on the UDO violations identified on its earlier Stop Work Notice.[2] First, Westfield stated that the steel pole constituted an "Accessory Building" under the UDO, and GEFT should have obtained an improvement location permit (separate from and in addition to a sign permit) before installing it.[3] Second, Westfield informed GEFT that if the steel

---

[2] The letter referenced a third violation—"[t]he installation of a nonconforming pole sign"—that is unrelated to the instant lawsuit because it involves another sign on the Esler Property.

[3] All improvements made to real property within Westfield require improvement location permits. UDO art. 2.5(D). An "improvement" includes "[a]ny building, structure, parking facility, fence, gate, wall, work of art, underground utility service, Land Disturbing Activity, or other object constituting Development, a physical alteration of real property, or any part of such alteration." *Id.* art. 12.1. An "accessory building" is "[a] subordinate building or structure, the use of which is incidental to and customary in connection with the Principal Building or use and which is located on the same Lot with such Principal Building or use and is under the same ownership." *Id*. A structure, in turn, is "[a]nything constructed or erected which requires location on the ground or attachment of something having location on the ground." *Id*.

pole was intended to be part of a sign, there were two further issues: GEFT should have applied for a sign permit before commencing installation, and in any event, the UDO bans all pole signs. Finally, Westfield informed GEFT that "[t]his letter is being provided as a warning to notify you of these violations … Please remedy this violation within thirty (30) days from the issuance of this letter (December 22nd) in order to avoid further enforcement action." Westfield then posted two more Stop Work Notices (identical to the first) on the steel pole, on November 27 and December 8.

Despite these notices, GEFT mobilized a construction team on December 16 to finish erecting the Billboard by placing an "advertising head" on the steel pole. At approximately 8:15 AM, GEFT's contractors began their work by offloading steel components at the site, on the ground near the pole. GEFT's founder and owner Jeffrey Lee was onsite that morning, along with GEFT representative John Kisiel, two contractors hired to perform sign erector work on the sign head installation (Marshall Heath Brock and Phillip Finn), a crane operator, and others. At around 10:15 AM, Westfield City Inspector Matthew Skelton arrived at the Esler Property along with two Westfield police officers. They demanded that all work stop, and one of the police officers told Lee that if construction continued, GEFT would be "asking for trouble."

While the City Inspector and the officers were still onsite, counsel for Westfield e-mailed GEFT's counsel, informing them that "GEFT or its agents … appear to be attempting to continue to build a structure without a permit in violation of the Westfield UDO and the Stop Work Order. Law enforcement has been called and the City will use its police powers as necessary to enforce the stop work order." Counsel for

GEFT responded that Westfield had no legal basis to cease activity at the Esler Property; Westfield's counsel in turn cited the UDO and noted that the city "has the authority to abate a common nuisance by using its police powers."

Back at the Esler Property, Skelton spoke with each of GEFT's onsite contractors, including Brock and Finn, informing them that they would be fined if they continued to do any work on the Billboard in violation of the Stop Work Orders. The crane operator demobilized the crane and the contractors stopped all their work. But approximately five minutes after Skelton and the police officers left the site, the contractors resumed installation of the Billboard.

About twenty minutes later, Brian Zaiger (a partner at a private law firm representing the city) arrived at the site. Zaiger identified himself as a "City Attorney" and advised Lee that "the police were on their way." Zaiger then pointed at Lee and Kisiel and said that if work was not stopped immediately, he would have them arrested along with GEFT's onsite contractors. When Lee said that this was a civil matter rather than a criminal one, Zaiger responded that Lee was in violation of the Stop Work Orders, any continued work was a nuisance, and the only way to abate the nuisance was to "throw you two in jail and then figure it out from there." During his exchange with Zaiger, Lee called GEFT's attorney and offered the phone to Zaiger; Zaiger, however, said he "wasn't interested" in speaking with him. According to Zaiger, he did not know it was counsel for GEFT that was on the call, as Lee had "just said he had a lawyer on the phone."

Zaiger also approached the crane operator and three other contractors to tell them that they would be arrested if they

continued to do work at the site. The crane operator demobilized the crane and the contractors stopped performing any work. Lee also instructed GEFT's contractors to cease further work on putting the advertising head onto the Billboard. Lee observed Zaiger tell a police officer who had returned to the site that, because work had stopped on the sign, there was no need to arrest anyone.

Westfield posted another Stop Work Notice on GEFT's pole on December 18, and it posted more comprehensive Stop Work Orders on the pole on January 19 and January 26, 2018. According to Lee, though, GEFT stopped work on the Billboard only because of Zaiger's December 16 arrest threats, not because of the city's Stop Work Notices or Orders.

## C. Preliminary Injunction & Restraining Order Motions

Three days after this confrontation at the Esler Property, Westfield filed a motion for a restraining order compelling GEFT to immediately stop work on the installation of its sign pending the outcome of its federal lawsuit. According to the city, this was necessary to maintain the status quo during the litigation, and it was warranted because GEFT had demonstrated its refusal to adhere to the UDO's permit requirements and pole-sign ban.

GEFT then filed an amended complaint and its own preliminary injunction motion. GEFT's First Amended Complaint, which is the operative version for purposes of appeal,[4] included the three causes of action in the original complaint: (1) the Permit Exceptions violate the First Amendment and

---

[4] Since filing this appeal, GEFT has moved to file a second amended complaint and a supplemental complaint.

Article I, § 9 of the Indiana Constitution; (2) the Off-Premises Ban violates the same provisions; and (3) the Sign Standards are void for not fulfilling the requirements of Indiana's Home Rule. GEFT also added two new causes of action to its complaint based on the events of December 16: (4) a due process claim pursuant to 42 U.S.C. § 1983; and (5) a claim for abuse of process. In its contemporaneous preliminary injunction motion, GEFT requested that the court enjoin Westfield from (a) "Taking any further actions to enforce the Stop Work Notice;" (b) "Taking any further actions to prevent GEFT from enjoying the use of its property without due process of law;" and (c) "Threatening GEFT and/or its representatives with imprisonment, or imprisoning them, for violation of the UDO and/or the Stop Work Notice (or any similar order) when GEFT finishes construction of the … Billboard."

After a hearing on both motions, the court denied GEFT's motion and granted Westfield's motion on September 28, 2018. It ordered GEFT "to not continue any work on its pole and digital sign in Westfield until after resolution of this case on the merits." This interlocutory appeal followed.

## II. Discussion

When reviewing a district court's grant or denial of a preliminary injunction, "legal conclusions are reviewed de novo, findings of historical or evidentiary fact for clear error, and the balancing of the injunction factors for an abuse of discretion." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). To obtain a preliminary injunction, a plaintiff "must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; that without relief it will suffer irreparable harm." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th

Cir. 2018). If the plaintiff fails to meet any of these threshold requirements, the court "must deny the injunction." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,* 549 F.3d 1079, 1086 (7th Cir. 2008). However, if the plaintiff passes that threshold, "the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Planned Parenthood*, 896 F.3d at 816. This Circuit "employs a sliding scale approach" for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor. *Id.*

Like the district court, we begin our analysis with GEFT's preliminary injunction motion before turning to Westfield's motion. We note that our analysis of these motions need not involve any discussion of GEFT's First Amendment challenges to specific Sign Standards provisions. While GEFT has indisputably challenged the constitutionality of the Sign Standards in its complaint, its preliminary injunction motion focuses solely on its due process claim and does not request a ruling on the Sign Standards' compliance with the First Amendment. In fact, GEFT informed the district court that "[r]esolution of these [First Amendment] constitutional issues is not necessary for resolution of GEFT's preliminary injunction." Westfield's motion also did not ask the district court to definitively rule on the Sign Standards' constitutionality. The district court thus did not address the merits of GEFT's First Amendment challenge to the Sign Standards, and we will not reach them here in the first instance. *See Old Republic Ins. Co. v. Fed. Crop Ins. Corp.*, 947 F.2d 269, 276 (7th Cir. 1991) ("It is fundamental that on appeal to this court a litigant is restricted

to those arguments which already have been raised at the district court level.").

### A. GEFT's Preliminary Injunction Motion

The district court denied GEFT's preliminary injunction motion for two reasons. It first held that GEFT had not shown it was reasonably likely to succeed on the merits of its due process claim. The district court also concluded that a preliminary injunction in GEFT's favor was unwarranted "based upon the timing and procedural history of GEFT's and Westfield's legal steps taken." More specifically, "GEFT's actions of knowingly violating the UDO, then later seeking this [c]ourt's intervention, and then again undertaking work in violation of the UDO, undermines the propriety of equitable relief before the case can be fully adjudicated." We consider each of these rationales in turn.

#### 1. *GEFT's Due Process Claims*

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. This due process guarantee includes procedural and substantive components. *See County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). GEFT claims violations of both.

#### a. Procedural Due Process

GEFT first argues Westfield violated its procedural due process rights when it stopped GEFT from finishing construction on the Billboard. To determine whether such a violation occurred, we first ask whether GEFT has been deprived of a protected liberty or property interest; and second, we ask whether that deprivation occurred without due process. *See*

*Black Earth Meat Mkt., LLC v. Village of Black Earth*, 834 F.3d 841, 848 (7th Cir. 2016).

To assess whether GEFT has a property interest protected by due process, we look to an independent source, such as state law, rather than the U.S. Constitution itself. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). GEFT's leasehold in the Esler Property is a protected interest that can support a procedural due process claim. *See River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994).[5]

The next part of this inquiry asks whether GEFT has been deprived of this property right without due process of law. *See Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004). GEFT asserts two different theories of how it suffered a deprivation because of Westfield's actions. First, GEFT claims that the city deprived it of its property right in its lease by

---

[5] GEFT also asserts that its state-issued Billboard permit is a vested, protected property right under Indiana law that can support its claim. This is unclear. While a state-granted building permit might be a vested property right, *see Metro. Dev. Comm'n of Marion Cty. v. Pinnacle Media, LLC*, 836 N.E.2d 422, 427–28 (Ind. 2005), Indiana's Department of Transportation provides in its regulations that all state permitting requirements are in addition to local requirements. Thus, GEFT only held its state Billboard permit subject to Westfield's own permitting scheme. That could mean GEFT's property right in the permit never vested; alternatively, that could mean Westfield did not deprive GEFT of any property right when it enforced the Sign Standards against it, as GEFT always held the Indiana permit subject to the Sign Standards. We do not need to decide the issue, as GEFT does have a protected property right in its Esler Property leasehold that could form the basis of a due process claim. And our analysis of the process that GEFT received from Westfield would be the same assuming it did have a protected property right in this permit and had been deprived of that right.

enforcing an "invalid" stop work notice against it without notice or a hearing. According to GEFT, the UDO requires that certain information be included in a "Stop Work Order" from Westfield—a description of the violation and the appeals process, the applicable enforcement provisions of the UDO including penalties that may be assessed, and a date for compliance. UDO art. 11.5(A). But the November 7 Stop Work Notice did not contain all this information, nor did Westfield's November 22 letter. Thus, GEFT says, the Stop Work Notice was not enforceable and provided no basis to order GEFT to stop putting up its Billboard.

This theory cannot support a procedural due process claim. As an initial matter, GEFT's own evidence submitted in support of its motion demonstrates that it stopped constructing the Billboard only because of Zaiger's arrest threats, not because of notices it received from Westfield. Lee states in his affidavit that "GEFT contractors stopped working because of the threat of incarceration, not because of a stop work order" and that "[b]ut for the threats of arrest noted above, the work on the … Billboard that was planned for December 16, 2017 … would have been completed." Kisiel agreed with Lee's recitation of the facts of what happened on December 16. And both Brock and Finn, the two contractors onsite that day, said in affidavits that "[w]ere it not for the threats of arrest … we would have been able to complete the work that was planned for December 16, 2017 to erect the sign head for the … Billboard." The Stop Work Notices therefore could not have deprived GEFT of its property.

Even if the Stop Work Notices themselves halted further work on the Billboard, and assuming this work stoppage "deprived" GEFT of its leasehold interest, GEFT's only complaint

about these notices is that they did not comply with the UDO's requirements. But there is no constitutional procedural due process right to state-mandated procedures. *See Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013); *River Park*, 23 F.3d at 166–67 (plaintiff "may not have received the process [the state] directs its municipalities to provide, but the Constitution does not require state and local governments to adhere to their procedural promises"). The fact that the Stop Work Notices did not comply with the UDO's procedures cannot support a procedural due process claim, and GEFT does not raise any other issue with the process it received via the Stop Work Notices beyond their noncompliance with the UDO. Thus, it has not shown any likelihood of success on the merits of its procedural due process claim as it relates to these notices.[6]

---

[6] Moreover, the process that GEFT was entitled to was what was "due under the circumstances." *Charleston*, 741 F.3d at 772; *see also Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))). The traditional hallmarks of procedural due process are "notice and an opportunity to be heard." *Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 628 (7th Cir. 2016). Westfield provided both before GEFT stopped erecting the Billboard. The November 7 Stop Work Notice informed GEFT of how the steel pole installation allegedly violated the UDO; Westfield's November 22 letter provided even more details about those violations, gave a proposed date for compliance, and warned that "further enforcement action" could follow if GEFT did not comply with Westfield's ordinances. And "[a]ny decision … in enforcement or application of [the UDO] may be appealed to the [Board of Zoning Appeals] by any person claiming to be adversely affected by such decision." UDO art. 3.2(B)(1). GEFT could have taken advantage of that process before or after December 16 and received the opportunity to be heard regarding Westfield's contentions that its Billboard violated the Sign Standards. *See River Park*, 23 F.3d at 167 (procedural due

GEFT also says that Westfield "violated its leasehold interest in the [Esler] Property by threatening GEFT's representatives with arrest and imprisonment." But GEFT cannot support its claim based on this theory either. When a plaintiff alleges a deprivation based on conduct that is "random and unauthorized, the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy." *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 805 (7th Cir. 2010) (alterations and citation omitted); *see Armstrong v. Daily*, 786 F.3d 529, 544 (7th Cir. 2015) (conduct is random and unauthorized when "the state could not predict the conduct causing the deprivation, could not provide a pre-deprivation hearing as a practical matter, and did not enable the deprivation through established state procedures and a broad delegation of power").

GEFT presented evidence that on December 16, Zaiger came onto the Esler Property, identified himself as the Westfield city attorney, and told Lee and the others on the site that they would be arrested if work was not stopped immediately. According to GEFT, it was only because of these threats that

---

process requirements for property owner's loss were satisfied where owner had "ample means to contest the runaround it was receiving at the hands of" the defendant through state law processes). We also note that GEFT could have applied for a permit before it began erecting the Billboard. While GEFT can bring a preenforcement First Amendment challenge to the Sign Standards without subjecting itself to that process, *see ACLU v. Alvarez*, 679 F.3d 583, 590–91 (7th Cir. 2012), the permitting process remained available as a way for GEFT to engage with Westfield's Sign Standards and receive both notice and an opportunity to be heard before being denied the right to install its sign. GEFT does not take issue with the procedural adequacies of any of these processes available to it to challenge Westfield's decision preventing continued work on the Billboard.

it stopped constructing the Billboard, and it was these threats that therefore deprived it of its leasehold interest.[7] But both GEFT and Westfield agree that neither local nor state law authorizes the arrest of anyone violating a municipal ordinance. Even if Zaiger is considered an employee of Westfield (which is an open question as Zaiger worked for a private law firm representing the city), GEFT has not identified any evidence Westfield authorized Zaiger's threats or even could have predicted he would make them that day. *See Leavell*, 600 F.3d at 806. As Westfield points out, the Indiana Tort Claims Act provides a remedy for any abuse of process that Zaiger's actions represent. *See* Ind. Code § 34-13-3 *et seq*. GEFT has not made any attempt to show that it took advantage of this process or that this remedy would be insufficient to compensate it for what was lost by Zaiger's threats. *See Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) ("Given the availability of state remedies that have not been shown to be inadequate, plaintiffs have no procedural due process claim."). Because it has not made this showing, GEFT has not demonstrated it is likely to succeed on the merits of its procedural due process claim.

And since GEFT has no likelihood of success on the merits of this claim, there was no need for the district court to conduct further analysis of the "threshold phase" for preliminary

---

[7] We note that is not clear GEFT was even deprived of anything: its leasehold interest in the Esler Property is subject to state and local regulations, such as the UDO. *See River Park*, 23 F.3d at 167 ("State and local governments may regulate and even take property; they must *pay* for what they take but are free to use the land as they please."). But Westfield makes no argument to the contrary in its brief, and so we will assume that a deprivation occurred here.

injunctive relief, or to move to the "balancing phase." *See Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) ("If it is plain that the party seeking the preliminary injunction has no case on the merits, the injunction should be refused regardless of the balance of harms." (citation omitted)). GEFT is not entitled to its requested preliminary injunction based on its procedural due process claim.

b. Substantive Due Process

GEFT also seeks a preliminary injunction based on an alleged violation of its substantive due process rights. It argues that Westfield used Zaiger's "unlawful threat" of imprisonment "to coerce GEFT into not exercising its constitutional right to enjoy the use of its [p]roperty." According to GEFT, Zaiger's conduct in this regard "is so utterly arbitrary and irrational that it shocks the conscience."

The substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Porter v. DiBlasio*, 93 F.3d 301, 310 (7th Cir. 1996) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). The scope of a substantive due process claim is limited. *See Platt v. Brown*, 872 F.3d 848, 852 (7th Cir. 2017). When a plaintiff brings such a claim challenging "harmful, arbitrary acts by public officials," this claim "must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). More specifically, "the cognizable level of executive abuse of power [is] that which shocks the conscience." *Lewis*, 523 U.S. at 846. "[O]nly the most egregious official conduct" can meet this standard. *Id.*

GEFT is not likely to succeed on the merits of this claim. Although Zaiger's threats of arrest were certainly inappropriate insofar as Indiana law does not provide a basis to arrest someone for violating a municipal ordinance, his threats are a far cry from the type of conduct recognized as conscience-shocking (especially considering that he did not follow through and have anyone arrested). *See, e.g.*, *Rochin v. California*, 342 U.S. 165, 172–73 (1952) (forcibly pumping criminal suspect's stomach shocked the conscience).[8]

In its reply brief, GEFT says that since Westfield violated its property interest in its lease, Westfield violated its substantive due process rights even if Zaiger's conduct did not shock the conscience. However, "[s]ubstantive due process is not 'a blanket protection against unjustifiable interferences with property.'" *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008) (quoting *Lee v. City of Chicago*, 330 F.3d 456, 461 (7th Cir. 2003)). If GEFT wishes to challenge Westfield's interference with its property interests as a type of land-use decision that rises to the level of a substantive due process violation, it "must first establish either an independent constitutional violation or the inadequacy of state remedies to redress the deprivation." *Id.* at 1001. GEFT has done

---

[8] GEFT also claims that Zaiger may have violated a rule of professional conduct by speaking to Lee directly and refusing to speak to GEFT's lawyer. *See* Ind. Rules of Prof. Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter."). Even assuming such a violation did occur (which is not clear from the record), that would not change this analysis. A violation of this rule may be unprofessional, but that does not mean it shocks the conscience. *See Tun v. Whitticker*, 398 F.3d 899, 903 (7th Cir. 2005) (even "abhorrent" behavior by officials does not necessarily shock the conscience).

neither. Therefore, GEFT cannot succeed on its substantive due process claim under this theory.[9]

As with the procedural due process claim, GEFT's substantive due process claim has no likelihood of success on the merits. Thus, the district court did not err in declining to enter a preliminary injunction in GEFT's favor, and there is no need to continue with the preliminary injunction analysis. *See Girl Scouts*, 549 F.3d at 1086.

### 2. *GEFT's Unclean Hands*

In addition to its decision that GEFT was unlikely to succeed on the merits of its due process claims, the district court also denied injunctive relief because GEFT's actions in "knowingly violating the UDO, then later seeking this [c]ourt's intervention, and then again undertaking work in violation of the UDO, undermine[d] the propriety of equitable relief" in its favor. This is so because "ordinances adopted by a city are presumptively valid until a court has determined

---

[9] Even if Zaiger's actions did rise to the level of conscience-shocking conduct or otherwise constitute a substantive due process violation, GEFT has not properly alleged that Westfield could be held liable under § 1983 for his actions. GEFT brings its substantive due process claim under § 1983 against Westfield only; however, there is no respondeat superior liability for municipalities under this statute. *See Belcher v. Norton*, 497 F.3d 742, 754 (7th Cir. 2007). The City could be liable if Zaiger was a "final policymaker." *See id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). GEFT argues Zaiger's actions "can fairly be said to represent official policy," but the mere fact that he worked for Westfield does not show that, pursuant to state law, Zaiger possessed such authority. *See Pembaur*, 475 U.S. at 480. This is another reason why GEFT has not shown it is likely to succeed on the merits of its substantive due process claim.

them to be otherwise," and "GEFT cannot unilaterally decide that an ordinance is invalid and then disobey it."

GEFT challenges this "unclean hands" aspect of the district court's decision as well. We review the district court's exercise of its "equitable judgment and discretion" in this regard for abuse of discretion. *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014).

The purpose of the unclean-hands doctrine "is to discourage unlawful activity." *Original Great Am. Chocolate Chip Cookie Co. v River Valley Cookies, Ltd.*, 970 F.2d 273, 281 (7th Cir. 1992); *see Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985) ("'[U]nclean hands' really just means that in equity as in law the plaintiff's fault, like the defendant's, may be relevant to the question of what if any remedy the plaintiff is entitled to."). According to GEFT, it could not be at fault for refusing to apply for or obtain a permit before it started construction on the Billboard. GEFT argues that because the Sign Standards are, in its view, unconstitutional, it is as if they never existed, and GEFT "cannot have unclean hands for not complying with a non-existent law."

GEFT's argument is premised on a misunderstanding about who has the authority to declare a law void; GEFT itself does not have that power. After a court holds that a statute or ordinance is unconstitutional, that legislation is void. *See GEFT Outdoor LLC v. Consol. City of Indianapolis & County of Marion*, 187 F. Supp. 3d 1002, 1012 (S.D. Ind. 2016) (noting that because the court had ruled the ordinance at issue was unconstitutional, the plaintiff could derive no rights from it). But the court's ruling that the law is invalid is the crucial trigger for voiding it. Parties who believe that a statute or ordinance is unconstitutional must wait for that to happen before treating

the challenged law as nonexistent. They do not have free rein to invoke a court's jurisdiction over a challenge to an ordinance, but to then act like the law does not exist before the court reaches the merits of its challenge.

The constitutionality of the Permit Exceptions and the Off-Premises Ban in the Sign Standards is one of the main issues raised in GEFT's complaint against Westfield. We express no opinion on the merits of these First Amendment claims; it may be that GEFT eventually prevails and the district court will declare these portions of the Sign Standards unconstitutional and void. The court might also conclude that these portions are not severable from the rest of the Sign Standards, as GEFT argues, and that entire chapter of the UDO must be declared void. But the district court has not considered or accepted any of these arguments yet, so various outcomes of GEFT's challenge are still possible. The Sign Standards are still in force until that happens. This is the basic principle the district court applied in its decision to assess the equity of GEFT's actions in the context of this lawsuit—until a court declares that the Sign Standards are unconstitutional, GEFT must presume that this chapter of the UDO is a valid enactment of the city's legislature that applies to its conduct.

GEFT argues this is the wrong way to approach its own challenge, though. It says that the Sign Standards are content based, and courts must presume that a content-based law is unconstitutional. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). But GEFT confuses the issue: the presumption from *Reed* applies when a court actually reviews a law for its compliance with the First Amendment. That is not what either party asked the court to do in the context of these injunction

motions. Instead, GEFT sought an injunction because of alleged due process violations, and Westfield sought one to maintain the status quo pending the ultimate resolution of the case. Neither GEFT nor Westfield asked the district court to rule on the Sign Standards' constitutionality, so *Reed*'s presumption did not apply.

The district court, faced with a situation where GEFT had invoked the court's power over its dispute with Westfield, but then unilaterally acted in violation of a still-valid ordinance, did not abuse its discretion in determining that these actions supported denying GEFT's motion for equitable relief. Once GEFT filed its lawsuit seeking a judicial determination on the Sign Standards' validity, it needed to let that process unfold before treating them as nonexistent.[10]

### B. Westfield's Motion for a Restraining Order

After denying GEFT its requested injunctive relief, the district court stated that "[i]n light of" its ruling on that motion, it would grant Westfield's motion for a restraining order "to

---

[10] Ordinarily, the unclean-hands doctrine "only applies when there is a direct nexus between the bad conduct and the activities sought to be enjoined.'" *Shondel*, 775 F.2d at 869 (quoting *Int'l Union, Allied Indus. Workers v. Local Union No. 589*, 693 F.2d 666, 672 (7th Cir. 1982)). GEFT argues there is no nexus here between its conduct and the activities it sought to enjoin because "GEFT has not taken any action inconsistent with its request to exercise its First Amendment rights." But again, GEFT misconstrues the scope of its preliminary injunction motion. GEFT did not ask for First Amendment-related injunctive relief; it asked the court for an order allowing it to continue constructing the Billboard without interference from Westfield, despite its failure to comply with the still-valid Sign Standards. A sufficient nexus exists between GEFT's requested relief from this ordinance and its actions in ignoring the ordinance to invoke this doctrine.

the extent that it requests an order prohibiting GEFT from continuing any work on its pole and digital sign until after the [c]ourt rules on the constitutionality of the UDO and resolves this litigation on the merits."

The district court did not conduct a separate analysis on Westfield's motion, but such an analysis was unnecessary considering its denial of GEFT's motion.[11] GEFT had asked the district court for an order enjoining Westfield from taking any further actions to enforce the Sign Standards against them, via the Stop Work Notices or otherwise. The court determined that GEFT was not entitled to this relief both because it had no likelihood of success on the merits of its due process claim, and because GEFT could not ignore the Sign Standards just because it thought they were unconstitutional. Considering that ruling, Westfield's motion for an order requiring that GEFT stop work on the Billboard pending the outcome of the litigation on the merits sought no more from the district court than the logical consequence of its first decision—preventing further actions by GEFT in contravention of the Sign Standards. It was not an abuse of discretion for the district court to prevent GEFT from continuing any construction until the court ruled on whether it would have needed a sign permit under the Sign Standards to erect its Billboard. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) ("[T]he purpose of a preliminary injunction is merely to preserve the relative

---

[11] Although Westfield's motion is captioned as one for a "restraining order," the district court treated it as one for a preliminary injunction. As GEFT received notice of it, this was proper, and the motion can be reviewed using the same preliminary injunction standard set out above. *See Levas & Levas v. Village of Antioch*, 684 F.2d 446, 448 (7th Cir. 1982).

positions of the parties until a trial on the merits can be held."
(internal quotation marks omitted)).

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the
district court.