(Slip Opinion)　　　　Cite as:　585 U. S. ____ (2018)　　　　　1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 17–333

O. JOHN BENISEK, ET AL., APPELLANTS *v.*
LINDA H. LAMONE, ADMINISTRATOR,
MARYLAND STATE BOARD OF
ELECTIONS, ET AL.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

[June 18, 2018]

PER CURIAM.

This appeal arises from the denial of a motion for a preliminary injunction in the District Court.  Appellants are several Republican voters, plaintiffs below, who allege that Maryland's Sixth Congressional District was gerrymandered in 2011 for the purpose of retaliating against them for their political views.

In May 2017, six years after the Maryland General Assembly redrew the Sixth District, plaintiffs moved the District Court to enjoin Maryland's election officials from holding congressional elections under the 2011 map.  They asserted that "extend[ing] this constitutional offense"— *i.e.,* the alleged gerrymander—"into the 2018 election would be a manifest and irreparable injury."  Record in No. 1:13–cv–3233, Doc. 177–1, p. 3.  In order to allow time for the creation of a new districting map, plaintiffs urged the District Court to enter a preliminary injunction by August 18, 2017.  *Id.,* at 32.

On August 24, 2017, the District Court denied plaintiffs'

motion and stayed further proceedings pending this Court's disposition of partisan gerrymandering claims in *Gill* v. *Whitford*, No. 16–1161. 266 F. Supp. 3d 799. The District Court found that plaintiffs had failed to show a likelihood of success on the merits sufficient to warrant a preliminary injunction. *Id.,* at 808–814. The District Court also held that it was "in no position to award [p]laintiffs the remedy they . . . requested on the timetable they . . . demanded." *Id.,* at 815. The court explained that, notwithstanding its "diligence in ruling on the pending preliminary injunction motion (which has been a priority for each member of this panel)," plaintiffs' proposed August deadline for injunctive relief had "already come and gone." *Ibid.*

In addition, the District Court emphasized that it was concerned about "measuring the legality and constitutionality of any redistricting plan in Maryland . . . according to the proper legal standard." *Id.,* at 816. In the District Court's view, it would be "better equipped to make that legal determination and to chart a wise course for further proceedings" after this Court issued a decision in *Gill. Ibid.* Plaintiffs ask this Court to vacate the District Court's order and remand for further consideration of whether a preliminary injunction is appropriate.

We now note our jurisdiction and review the District Court's decision for an abuse of discretion, keeping in mind that a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. 7, 24 (2008). As a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits. *See id.,* at 32. Rather, a court must also consider whether the movant has shown "that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

the public interest." *Id.,* at 20.

Plaintiffs made no such showing below. Even if we assume—contrary to the findings of the District Court— that plaintiffs were likely to succeed on the merits of their claims, the balance of equities and the public interest tilted against their request for a preliminary injunction.

First, a party requesting a preliminary injunction must generally show reasonable diligence. Cf. *Holmberg* v. *Armbrecht*, 327 U. S. 392, 396 (1946). That is as true in election law cases as elsewhere. See *Lucas* v. *Townsend*, 486 U. S. 1301, 1305 (1988) (KENNEDY, J., in chambers); *Fishman* v. *Schaffer*, 429 U. S. 1325, 1330 (1976) (Marshall, J., in chambers). In this case, appellants did not move for a preliminary injunction in the District Court until six years, and three general elections, after the 2011 map was adopted, and over three years after the plaintiffs' first complaint was filed.

Plaintiffs argue that they have nevertheless pursued their claims diligently, and they attribute their delay in seeking a preliminary injunction to the "convoluted procedural history of the case" and the "dogged refusal to cooperate in discovery" by state officials. Reply Brief 22. Yet the record suggests that the delay largely arose from a circumstance within plaintiffs' control: namely, their failure to plead the claims giving rise to their request for preliminary injunctive relief until 2016. Although one of the seven plaintiffs before us filed a complaint in 2013 alleging that Maryland's congressional map was an unconstitutional gerrymander, that initial complaint did not present the retaliation theory asserted here. See Amended Complaint, Doc. 11, p. 3 (Dec. 2, 2013) (explaining that the gerrymandering claim did not turn upon "the reason or intent of the legislature" in adopting the map).

It was not until 2016 that the remaining plaintiffs joined the case and filed an amended complaint alleging that Maryland officials intentionally retaliated against

them because of their political views. See 3 App. 640–643. Plaintiffs' newly presented claims—unlike the gerrymandering claim presented in the 2013 complaint—required discovery into the motives of the officials who produced the 2011 congressional map. See, *e.g.,* Memorandum of Law in Support of Plaintiffs' Motion to Compel, Doc. 111–1, p. 3 (Jan. 4, 2017) (describing plaintiffs' demand that various state officials "testify . . . and answer questions concerning legislative intent"). It is true that the assertion of legislative privilege by those officials delayed the completion of that discovery. See Joint Motion To Extend Deadlines for Completion of Fact Discovery and Expert Witness Disclosures, Doc. 161, pp. 1–2 (Mar. 3, 2017); Joint Motion To Extend Deadlines for Completion of Fact Discovery and Expert Witness Disclosures, Doc. 170, pp. 1–2 (Mar. 27, 2017). But that does not change the fact that plaintiffs could have sought a preliminary injunction much earlier. See *Fishman*, *supra*, at 1330. In considering the balance of equities among the parties, we think that plaintiffs' unnecessary, years-long delay in asking for preliminary injunctive relief weighed against their request.

Second, a due regard for the public interest in orderly elections supported the District Court's discretionary decision to deny a preliminary injunction and to stay the proceedings. See *Purcell* v. *Gonzalez*, 549 U. S. 1, 4–5 (2006) (*per curiam*). Plaintiffs themselves represented to the District Court that any injunctive relief would have to be granted by August 18, 2017, to ensure the timely completion of a new districting scheme in advance of the 2018 election season. Despite the District Court's undisputedly diligent efforts, however, that date had "already come and gone" by the time the court ruled on plaintiffs' motion. 266 F. Supp. 3d, at 815. (Such deadline has also, of course, long since passed for purposes of entering a preliminary injunction on remand from this Court.)

Per Curiam

On top of this time constraint was the legal uncertainty surrounding any potential remedy for the plaintiffs' asserted injury. At the time the District Court made its decision, the appeal in *Gill* was pending before this Court. The District Court recognized that our decision in *Gill* had the potential to "shed light on critical questions in this case" and to set forth a "framework" by which plaintiffs' claims could be decided and, potentially, remedied. 266 F. Supp. 3d, at 815–816. In the District Court's view, "charging ahead" and adjudicating the plaintiffs' claims in that fluctuating legal environment, when firmer guidance from this Court might have been forthcoming, would have been a mistake. *Id.,* at 816. Such a determination was within the sound discretion of the District Court. Given the District Court's decision to wait for this Court's ruling in *Gill* before further adjudicating plaintiffs' claims, the court reasonably could have concluded that a preliminary injunction would have been against the public interest, as an injunction might have worked a needlessly "chaotic and disruptive effect upon the electoral process," *Fishman*, *supra*, at 1330, and because the "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *University of Tex.* v. *Camenisch*, 451 U. S. 390, 395 (1981). In these particular circumstances, we conclude that the District Court's decision denying a preliminary injunction cannot be regarded as an abuse of discretion.

The order of the District Court is

*Affirmed.*