RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JOSEPH TANNIRU KISHORE; NORISSA SANTA CRUZ,

　　　　　　　　　　　　　　*Plaintiffs-Appellants*,

　　　*v.*

GRETCHEN WHITMER; JOCELYN BENSON; JONATHAN
BRATER,

　　　　　　　　　　　　　　*Defendants-Appellees*.

No. 20-1661

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:20-cv-11605—Sean F. Cox, District Judge.

Decided and Filed:  August 24, 2020

Before:  BOGGS, BUSH, and MURPHY, Circuit Judges.

─────────────────

### COUNSEL

**ON BRIEF:**  Eric Lee, Oak Park, Michigan, for Appellants.  Heather S. Meingast, Erik A. Grill,
OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Defendants.

─────────────────

### OPINION

─────────────────

JOHN K. BUSH, Circuit Judge.  Joseph Tanniru Kishore and Norissa Santa Cruz seek to
have their names placed on the Michigan ballot as candidates for president and vice president,
respectively, without complying with the State's ballot-access laws.  They contend that the
ballot-access requirements, as applied, are unconstitutionally burdensome under the First and
Fourteenth Amendments to the United States Constitution when enforced alongside Michigan's

orders restricting in-person gatherings during the COVID-19 pandemic. Given binding precedent and measures taken by the State to accommodate ballot access during the pandemic, we hold that Kishore and Santa Cruz's exclusion from the ballot does not violate these constitutional provisions. Therefore, we **AFFIRM** the district court.

## I.

### A. Michigan's Ballot-Access Laws

Kishore and Santa Cruz are the Socialist Equality Party's candidates for president and vice president. To appear as independent candidates on the ballot in Michigan, they must file a qualifying petition containing a sufficient number of valid signatures. *See* Mich. Comp. Laws §§ 168.590a(2), 168.590b(2). In normal circumstances, Kishore and Santa Cruz would have to obtain at least 30,000 valid signatures of registered voters, Mich. Comp. Laws § 168.544f, with at least 100 signatures from registered voters in at least one-half of the fourteen congressional districts in Michigan, Mich. Comp. Laws § 168.590b(4). However, a district court in Michigan permanently enjoined the State from enforcing these signature requirements against independent candidates. *See Graveline v. Benson*, 430 F. Supp. 3d 297, 318 (E.D. Mich. 2019). The district court in *Graveline* ordered, as an interim measure, that the signature requirements for independent candidates be reduced to 12,000.[1] *Id.* The qualifying petition was due on July 16, Mich. Comp. Laws § 168.590c(2), and signatures could not be more than 180 days old when the petition was filed, Mich. Comp. Laws § 168.590b(3). Therefore, Plaintiffs could gather signatures between January 18, 2020 and July 16, 2020.

### B. Michigan's Response to COVID-19

Michigan Governor Gretchen Whitmer has issued numerous executive orders in response to COVID-19. On March 23, 2020, she issued a "Stay-at-Home Order" that required, among other things, all persons not performing essential or critical infrastructure job functions to stay in their place of residence other than in certain limited circumstances—such as to buy groceries, care for loved ones or engage in outdoor activities—while observing proper social-distancing

---

[1]*Graveline* is on appeal before a different panel of this court, and so the interim signature requirement is still in effect.

guidelines. Mich. Exec. Order No. 2020-21, *available at* https://bit.ly/3kB2DqE. This Stay-at-Home Order was to be in effect through April 13, 2020, but Governor Whitmer subsequently extended it through April 30, *see* Mich. Exec. Order No. 2020-42, *available at* https://bit.ly/31FPynb, then through May 15, *see* Mich. Exec. Order No. 2020-59, *available at* https://bit.ly/33QCCh8, and then again through May 28, *see* Mich. Exec. Order No. 2020-77, *available at* https://bit.ly/3gTheLS. Then, on June 1, Governor Whitmer issued two executive orders that permitted the reopening of many businesses in the state and allowed groups of persons not part of a single household to gather outside in limited numbers. *See* Mich. Exec. Order No. 2020-110, *available at* https://bit.ly/2XXGN6K; Mich Exec. Order No. 2020-115, *available at* https://bit.ly/31RcdwS.

C.      **Plaintiffs' Campaign and Signature-Gathering Efforts**

Plaintiffs announced their candidacies in January 2020. They immediately began organizing a series of meetings and public events in Michigan to launch the campaign. They hosted an event at the University of Michigan in Ann Arbor on February 24, and a second event at Wayne State University in Detroit on February 27. However, the events netted no signatures on their qualifying petition. Thereafter, Kishore traveled to California and hosted several events, but he again failed to receive any qualifying signatures. Kishore returned to Michigan in early March and still had obtained no signatures. At this point he decided to cancel all subsequent public events and campaign activity, including signature-gathering initiatives, in order to protect his campaign staff from COVID-19.

Thus, Plaintiffs had the opportunity to collect signatures on their qualifying petition with no restriction from any of Governor Whitmer's executive orders from the beginning of their campaign (January 18) to the date of Governor Whitmer's first Stay-at-Home Order (March 23). Plaintiffs have also had the opportunity to gather signatures in person from the date of the reopening orders (June 1) to the filing deadline (July 16). Yet, in all this time, Plaintiffs have not obtained a single signature on their qualifying petition.

### D.      Proceedings Below

Plaintiffs sued various state officials in federal court on June 18.  In their complaint, Plaintiffs alleged that the Stay-at-Home Order makes Michigan's ballot-access laws unconstitutional as applied to them because those requirements "are literally impossible for the Plaintiffs to fulfill during the ongoing global coronavirus pandemic."  R. 1 at PageID 2. Plaintiffs requested a preliminary injunction restraining the State from enforcing its ballot-access laws.

## II.

### A.      The *Anderson-Burdick* framework

"[T]he right to vote in any manner and the right to associate for political purposes through the ballot [are not] absolute," and "States retain the power to regulate their own elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).  The *Anderson-Burdick* framework governs First and Fourteenth Amendment challenges to ballot-access restrictions.  *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick*, 504 U.S. at 441.  Within that framework, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights."  *Burdick*, 504 U.S. at 434.

When state law imposes "'severe' restrictions," "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'"  *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).  When state law imposes "reasonable, nondiscriminatory restrictions," however, the law is subject to rational-basis review and "the State's important regulatory interests are generally sufficient to justify" the restrictions.  *Id.* (quoting *Anderson*, 460 U.S. at 788).  When state law imposes an intermediate restriction that falls somewhere between those two poles, "we weigh the burden imposed by the State's regulation against 'the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.'"  *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam) (quoting *Burdick*, 504 U.S. at 434).

**B.       The Burden Imposed**

Under *Anderson-Burdick*, we must first "determine the burden the State's regulation imposes on the plaintiffs' First Amendment rights." *Thompson*, 959 F.3d at 808.  Kishore and Santa Cruz contend that Michigan's response to the COVID-19 pandemic—namely, the Stay-at-Home Order first issued on March 23, 2020—renders the ballot-access laws unconstitutional as applied to them, because they were effectively prevented from obtaining signatures and, thus, the order imposed a "severe" burden on their First and Fourteenth Amendment rights.

We concluded in *Esshaki v. Whitmer* that strict application of Michigan's ballot-access laws to primary-election candidates, when combined with the Stay-at-Home Order, imposed a severe burden on constitutional rights.  813 F. App'x 170, 172 (6th Cir. 2020); *see also SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 597 (6th Cir. 2020).  However, we concluded in *Thompson* that Ohio's ballot-access laws and COVID-19 restrictions place an intermediate burden on the plaintiffs' First and Fourteenth Amendment rights when seeking to add local initiatives and a constitutional amendment to the November ballot.  *Thompson*, 959 F.3d at 809–11.  And, in *Hawkins*, we determined that those same ballot-access laws and COVID-19 restrictions placed an intermediate burden on presidential candidates from a minor political party seeking to have their names placed on the ballot.  *See Hawkins v. DeWine*, --- F.3d ---, No. 20-3717, 2020 WL 4435524 (6th Cir. Aug. 3, 2020);

The burdens in this case are materially less than those in *Esshaki*.  Significantly, the timing for gathering signatures was different.  We held that there was a severe burden because Michigan's Stay-at-Home Order remained in effect through the deadline to submit ballot-access petitions, effectively excluding all candidates who had not already satisfied the signature requirements (and predicted a shutdown).  *See* 813 F. App'x at 171.  But here, Kishore and Santa Cruz had the opportunity to gather signatures from January 18 to March 23 (before the Stay-at-Home Order went into effect), and then the renewed opportunity in early June (when the order was lifted).  Although "these are not normal times," we still consider "all opportunities these parties had to exercise their rights." *Thompson*, 959 F.3d at 809.  That Plaintiffs had several weeks to gather signatures both before the Stay-at-Home Order went into effect and after it was lifted undermines their argument that Michigan has excluded them from the ballot.  *See id.* at

810.  So, the burden imposed by the Stay-at-Home Order is less onerous than the burden in *Esshaki* and more comparable to the burdens imposed upon the plaintiffs in *Thompson* and *Hawkins*.  *See id.*

Furthermore, it was Plaintiffs (and not the State) who imposed much of the burden that they face on themselves.  "First Amendment violations require state action."  *Id.*; *see* U.S. Const. amend. I ("Congress shall make no law . . . ."); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . .").  To be sure, the State imposed some burden on Plaintiffs during the ten weeks that the Stay-at-Home Order was in effect.  But Plaintiffs were free to obtain signatures in person from the time they announced their campaign in January until the Stay-at-Home Orders were issued on March 23.  And they were free to gather signatures starting on June 1 when the Orders were lifted.  They made the conscious choice not to do so.  Although their decision was quite understandable, "we cannot hold private citizens' decisions to stay home for their own safety against the State."  *Thompson*, 959 F.3d at 810.

## C.    The Justification

The next step under *Anderson-Burdick* is to "consider the State's justifications for the restrictions."  *Schmitt v. LaRose*, 933 F.3d 628, 641 (6th Cir. 2019).  Because Michigan's ballot-access laws as applied to Kishore and Santa Cruz impose an intermediate burden, the state need only demonstrate that it has "legitimate interests to impose the burden that outweigh it."  *Thompson*, 959 F.3d at 811.  In considering the legitimate interests presented by the State, "the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights."  *Anderson*, 460 U.S. at 789.

Michigan provides two reasons for its ballot-access laws that this court has already determined are legitimate.  First, the State contends that the signature requirement ensures that a candidate has a modicum of support before appearing on the ballot in order to further the State's interest in a fair and orderly election by avoiding ballot overcrowding, frivolous candidates, and voter confusion.  *See Hawkins*, 2020 WL 4435524, at *3; *see also Schmitt*, 933 F.3d at 641.

Second, Michigan contends that the filing deadline is essential to ensure an orderly, timely election. Kishore does not meaningfully dispute these interests, which, as we observed in *Hawkins,* --- F.3d at ---, 2020 WL 4435524, at *3, *Thompson*, 959 F.3d at 811, and *Esshaki*, 813 F. App'x at 171, are legitimate.

### D.     Constitutional Validity of the Restrictions

"At the third step of *Anderson-Burdick* we assess whether the State's restrictions are constitutionally valid given the strength of its proffered interests." *Schmitt*, 933 F.3d at 641. Plaintiffs point to our decision in *Esshaki* to suggest that the combination of the ballot-access provisions and the Stay-at-Home Order cannot pass constitutional muster. But there, we applied strict scrutiny because the combined effect of the Stay-at-Home Order and ballot-access provisions effectively excluded the candidates from the ballot. 813 F. App'x at 171–72; *see Thompson*, 959 F.3d at 809 ("At bottom, a severe burden excludes or virtually excludes electors . . . from the ballot."). To be sure, obtaining signatures might well be more difficult now than it would be in normal circumstances. But, "just because procuring signatures is now harder (largely because of a disease beyond the control of the State) doesn't mean that Plaintiffs are *excluded* from the ballot." *Thompson*, 959 F.3d at 810.

On balance, the State's well-established and legitimate interests in administering its own elections through candidate-eligibility and ballot-access requirements outweigh the intermediate burden imposed on Plaintiffs.

### E.     Other Preliminary-Injunction Factors

The other preliminary-injunction factors also support Michigan. *See Thompson*, 959 F.3d at 807. When analyzing the balance of equities, "[the Supreme] Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam); *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). This principle applies here. Michigan has indicated that we must resolve the appeal by September 3 so that its ballot may be timely certified. In addition, by failing to collect even a single signature during times in which there were no restrictions, Plaintiffs have in some respects created the need for

the emergency relief. *See Morgan v. White*, 964 F.3d 649, 651 (7th Cir. 2020) (per curiam). As the district court also recognized, although Plaintiffs decided not to seek any signatures in March, they waited more than three months to file this action in mid-June. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944–45 (2018) (per curiam); *cf. Little v. Reclaim Idaho*, --- S. Ct. ---, 2020 WL 4360897, at \*2 (U.S. July 30, 2020) (Roberts, C.J., concurring in the grant of stay).

**III.**

The judgment of the district court is **AFFIRMED**.