NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0537n.06

Case No. 25-1495

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Nov 20, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| SHANGRILA PARTNERSHIP, <br>    Plaintiff, <br><br> SILVIA LAZO <br>    Plaintiff - Appellant <br><br> v. <br><br> HELENA MARIA LEMOS, <br>    Defendant - Appellee. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN <br><br> O P I N I O N |

Before: McKEAGUE, GRIFFIN, and MATHIS, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiffs Silvia Lazo and Shangrila Partnership filed this lawsuit against a long list of defendants. As is relevant for this appeal, one of the defendants is Lazo's sister, Helena Lemos. Plaintiffs claim they have been subjected to intentional infliction of emotional distress, tortious interference with contracts and business relationships, civil conspiracy, civil extortion, civil intimidation, and racketeering.

The claims stem from a family conflict. Sonia Mannelli (Lazo and Lemos's mother) currently resides in Brazil. Lazo alleges that Lemos, who resides in Michigan, is conspiring with the other named defendants to isolate Mannelli from the rest of her family in an effort to obtain her assets.

No. 25-1495, *Shangrila Partnership, et al. v. Helena Lemos, et al.*

The overarching dispute involves a more complicated web of factual and legal issues, including Brazilian court proceedings over whether Mannelli needs a legal guardian.[1] But this appeal concerns only Lazo's claim for intentional infliction of emotional distress against Lemos, and it addresses only one question: did the district court err in denying Lazo's motion for a preliminary injunction? Because the answer is no, we **AFFIRM**.

## I. BACKGROUND

Lazo claims to have been providing financial and emotional support to Mannelli for the past thirty years. Even though she resides in Montana, Lazo takes frequent trips to Brazil to care for her mother, who allegedly lives in a property that is partially owned by Shangrila Partnership.[2] In recent years, Lazo has grown increasingly concerned with Mannelli's health, the state of Mannelli's property, and the security of Mannelli's assets. Apparently, Mannelli has unexpectedly started to reject Lazo's attempts to provide advice and support. Lazo thinks Lemos, who has allegedly not been to Brazil in decades, is to blame for Mannelli's change of heart.

According to the record, Mannelli has been diagnosed with dementia and breast cancer. Lazo insists that Lemos has been coordinating with defendant Hamilton Praxedes de Silva (a Brazilian native who lives on Mannelli's property and purportedly acts as a caretaker) to prevent Mannelli from obtaining proper medical assistance. However, Mannelli's medical records indicate that access to care is not the issue; she goes to medical appointments but then refuses certain treatments (i.e., dressing her wounds). Still, Lazo claims Lemos is the problem. Lazo thinks Mannelli needs more intense support from a full-time nurse or assistant, and she insists (without pointing to any supporting evidence) that Lemos interferes with any efforts to help Mannelli.

---

[1] A Brazilian court rejected Lazo's attempt to become Mannelli's guardian on May 8, 2025.

[2] Lazo is allegedly the managing partner of Shangrila, although Defendants contest whether Shangrila is a registered entity.

Lazo is convinced that Lemos (with help from Praxedes) is engaged in a full-fledged effort to siphon off Mannelli's assets for her personal gain, accusing Lemos (on nothing more than "information and belief") of stealing Mannelli's pension and Social Security benefits. At this stage in the litigation, there is no evidence in the record that supports this alleged malfeasance. Nonetheless, according to Lazo's articulation of the facts, Lemos is orchestrating a scheme from her home in Michigan to intentionally isolate Mannelli in a run-down Brazilian shack.[3] As Lazo sees it, even though Lemos is supposedly harming Mannelli due to insufficient caretaking and forced isolation, "the psychological toll on Lazo is equally severe, if not greater," as Lemos's "actions appear calculated to assert permanent dominance and control" over Lazo. Appellant Br. 38, D.10. Simply put, Lazo claims Lemos is harming Mannelli in an effort to intentionally inflict emotional distress on Lazo.

Lazo also asserts that, in the past, Lemos has coordinated with Praxedes to prevent Lazo from seeing Mannelli on trips to Brazil. Specifically, Lazo claims that after arriving at Mannelli's property on December 6, 2024, Praxedes—who was on the phone with Lemos at the time—refused to let Lazo onto the property to see her mother. Lazo blames Lemos, insisting that Lemos must have instructed Praxedes to restrict Lazo's access. Lazo submitted a recording and transcript of the supposed December 6, 2024 call between Lemos and Praxedes into the record, but nothing indicates that Lemos provided any instructions to Praxedes regarding Lazo's access to the property. Dec. 6, 2024 Phone Call Tr., R.10-8 at PageID 119. Lemos's voice cannot be heard on the recording, the transcript does not list Lemos as a speaker, and nothing Praxedes says can be construed as receiving instructions to limit Lazo's access to the property. Lazo claims there were other times when Lemos supposedly tried to prevent Lazo from accessing Mannelli's property as well, but none were successful; Lazo was able to thwart those alleged attempts to limit her access to Mannelli.

---

[3] Although, as Lazo also acknowledged, at the time Lazo filed her motion, Praxedes had recently repaired Mannelli's windows and repainted the interior of her dwelling unit.

A few weeks after filing her complaint, Lazo filed a motion for an ex parte temporary restraining order ("TRO") and a preliminary injunction, asking the district court to restrict Lemos's conduct and establish a constructive trust to hold some of Lemos's assets. Lazo did not move for any other defendant to be subjected to the preliminary injunction. The district court denied Lazo's request for a TRO and created a briefing schedule for the preliminary injunction portion of the motion. Then, after reviewing the parties' briefs, the district court denied the preliminary injunction. Lazo timely appealed.[4]

## II. STANDARD OF REVIEW

We review a district court's denial of a preliminary injunction for abuse of discretion. *NHL Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003). The district court's decision to deny a preliminary injunction is "only to be disturbed if it 'relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018) (quoting *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011)). "We may affirm the district court's denial of injunctive relief 'for any reason supported by the record.'" *Int'l Union of Painters & Allied Trades*

---

[4] In addition to Lazo's challenge to the substance of the district court's order, which we address below, Lazo also mounts attacks based in procedure. She first argues that the district court did not make specific findings of fact or articulate specific conclusions of law as is necessary under Federal Rule of Civil Procedure 52(a). But her attempt to characterize compliance with Rule 52(a) as an onerous task that requires a detailed retelling of the entire background is unavailing. "The purpose of [the rule] is to provide an appellate court with a clear understanding of the district court's decision." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997). The district court sufficiently outlined the underlying facts and explained its rationale in its order. And the order allows us to have "a full understanding of the issues" at play, so, contrary to Lazo's contention, remand is not necessary. *Id.* Second, Lazo argues that the district court improperly considered evidence that, according to Lazo, was "noncompetent" because it consisted of uncertified translations. But when the district court determined Lazo did not present sufficient evidence to justify a preliminary injunction, it did so without relying on any of the purportedly noncompetent evidence. There was no error in that course of action. Further, we need not address the competency of this evidence because we, too, do not rely on it; looking solely at the evidence Lazo presents, she does not meet her burden to show a preliminary injunction is warranted.

*Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025) (quoting *McGirr*, 891 F.3d at 610).

### III. ANALYSIS

Lazo sought a preliminary injunction that would restrict much of Lemos's conduct and establish a "constructive trust over Lemos'[s] personal property and her share of community property." Pls.' Mot., R.9 at PageID 68-69. The district court denied Lazo's motion after concluding she demonstrated neither a likelihood of success on the merits nor a threat of irreparable harm.

"[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019) (citing *Benisek*, 585 U.S. at 158).

While "[c]ourts sometimes describe this inquiry as a balancing test[,] . . . even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *Id.* at 326-27 (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). The irreparable harm factor "is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Id.* at 327 (emphasis in original); *see also EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025) ("Irreparable harm is the core of the preliminary injunction . . . ."). Thus, a court is "'well within its province' when it denies a preliminary injunction based solely on the lack of an irreparable injury." *D.T.*, 942 F.3d at 327 (quoting *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991)). To warrant a preliminary injunction, "an injury 'must be both certain and

immediate,' not 'speculative or theoretical.'" *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). A "hypothetical threat" of alleged irreparable harm does not "warrant[] the 'extraordinary remedy' of a preliminary injunction." *Id.* (quoting *Benisek*, 585 U.S. at 158).

Lazo's motion to the district court can be broken down into two requests. First, she wanted an injunction that would enjoin Lemos from engaging in certain conduct that affects Lazo and Mannelli. Second, she wanted the district court to establish a constructive trust to hold Lemos's assets during the litigation. As the "party seeking a preliminary injunction," Lazo "bears the burden of justifying such relief." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021) (quoting *Am. C.L. Union Fund of Mich. v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015)). Our analysis can start and end with her failure to demonstrate irreparable harm on both requests.

### A. Enjoining Lemos's Conduct

Lazo's motion asked the district court to prevent Lemos from (1) "interfering with Lazo's visitation to and care of Mannelli;" (2) "creating unsafe conditions for Lazo or Mannelli;" (3) "preventing medical care of Mannelli;" (4) "hiding or disposing of in any way any of Mannelli's or Plaintiffs' assets;" and (5) "hiding or disposing of Mannelli's body (if she should die)." Pls.' Mot., R.9 at PageID 68. On appeal, she asserts, largely without citation to the record, that she has established the threat of irreparable harm. But "[i]n order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Griepentrog*, 945 F.2d at 154. And Lazo has not presented any evidence showing that Lemos has or would engage in any of this supposed injurious conduct.

*Visitation and Care of Mannelli*. The record is devoid of any indication that Lemos interfered with Lazo's ability to visit or care for her mother. Lazo claims that on one occasion

Praxedes stopped her at the gates of Mannelli's property, and he may have been on the phone with Lemos at the time, but Lazo does not connect the dots to show that Lemos was responsible for any inhibition in Lazo's ability to access Mannelli. And even if Lemos was involved, Lazo still must show that an injury is "both certain and immediate." *D.T.*, 942 F.3d at 327 (quoting *Griepentrog*, 945 F.2d at 154). Lazo does not assert that she plans on visiting her mother in Brazil any time soon, nor does she argue that Lemos would interfere with such visitation.

*Unsafe Conditions and Access to Medical Care*. Similarly, there is no evidence that Lemos created (or will imminently and certainly create) unsafe conditions for Lazo or Mannelli.[5] Nor does the record show Lemos has (or will) prevent Mannelli from obtaining medical care. To the extent Mannelli has been subjected to unsafe conditions or has not received proper medical care, Lazo cannot trace these purported injuries to Lemos. Lazo's baseless allegations fall woefully short of justifying the extraordinary relief of a preliminary injunction, and she does not show that these purported injuries are certain and immediately pending.

*Hiding or Disposing of Mannelli and Her Assets*. With regard to Lemos potentially hiding or disposing of Mannelli's or Plaintiffs' assets, or hiding or disposing of Mannelli's body if she were to pass away, Lazo seeks relief based on purely speculative and hypothetical concerns. Lazo presents no evidence that Lemos is stealing Mannelli's assets, relying solely on "information and belief" to accuse her sister of this conduct. Lazo then baselessly asserts that there exists a risk that Lemos would improperly dispose of Mannelli's body, assets, and effects should she die (without any indication that Mannelli's death is imminent). Lazo does not present evidence that Lemos would engage in such conduct, and she relies on "ifs" that "rule out the 'certain and immediate'

---

[5] As a general rule, "party-specific principles . . . permeate our understanding of equity." *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025). While equitable remedies aim to provide complete relief to the parties involved, courts have historically "refus[ed] to grant relief to nonparties." *Id.* Much of the relief Lazo requested would directly benefit her mother, nonparty Mannelli (i.e., preventing Lemos from creating unsafe conditions for Mannelli). In apparent recognition of the limitations on our equitable powers, Lazo frames her appeal as if Lemos is harming Mannelli to intentionally inflict emotional distress on Lazo. But even under this theory, Lazo cannot show an imminent and certain irreparable injury attributable to Lemos.

harm needed for a preliminary injunction." *Id.* (quoting *Griepentrog*, 945 F.2d at 154). Whether it be her lack of evidence or her reliance on the hypothetical threat of injury, Lazo cannot justify a contingency-plan preliminary injunction. *See id.*

Additionally, as the district court noted, the harm Lazo seeks to mitigate with her preliminary injunction—emotional damages from the alleged intentional infliction of emotional distress—is not irreparable. *See* Apr. 28, 2025 Dist. Ct. Op. & Order, R.27 at PageID 805, 807-08. "[N]ot every injury is irreparable." *EOG Res.*, 134 F.4th at 884. "'Irreparable' means 'not fully compensable by monetary damages.'" *Id.* (quoting *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). But the traditional remedy for intentional infliction of emotion distress is monetary damages, and that is the precise relief Lazo seeks in her complaint.

Lazo argues that courts have provided equitable relief due to emotional damages in the past, but in doing so, she mischaracterizes the caselaw. For example, Lazo cites *E.E.O.C. v. Chrysler Corp.*, 733 F.2d 1183 (6th Cir. 1984) as a case in her favor because the court purportedly deemed emotional distress an irreparable harm. Not so. In *Chrysler*, the court listed a number of harms, including emotional distress, and merely noted that the plaintiffs satisfied the irreparable harm requirement. *Id.* at 1186. But central to the claim was the plaintiffs' "loss of work and loss of future prospects," *id.*, harms that extend beyond the pain and suffering that can be compensated by economic damages, *see Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 530 (6th Cir. 2017) (recognizing that a harm to a competitive business position can constitute irreparable harm). Our circuit has not declared emotional distress—standing alone—sufficient to satisfy the irreparable harm requirement. We make no contrary declaration in this case.

### B. Establishing a Trust for Lemos's Assets

Lazo's motion also asked the district court to hold Lemos's assets in a trust to ensure Lazo could hypothetically collect on a judgment for money damages. Lazo is worried about Lemos's divorce proceedings, as if the division of Lemos's marital assets would render her judgment-proof

in this lawsuit. Not only does Lazo fail to provide any evidence showing Lemos's divorce would hinder her ability to pay a potential judgment, but the district court also lacked authority to provide such a drastic remedy in this lawsuit.

Where, as here, a plaintiff brings an action seeking damages, and presents no claim to (or lien on) the defendant's property, the district court lacks the authority to enter an "injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319, 327 (1999) (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 222-23 (1945)). As the Supreme Court explained, the power to seize a defendant's assets during the pendency of litigation—for the purpose of preserving a potential damages award—contravenes "the broad boundaries of traditional equitable relief," *id.* at 322, and risks "plac[ing] the whole rights and property of the community under the arbitrary will of the Judge," *id.* at 332 (quoting J. Story, Commentaries on Equity Jurisprudence § 19, at 21 (1836)). The district court rightfully refused Lazo's request.

## IV. CONCLUSION

For these reasons, we **AFFIRM** the district court's order.